**UNITED STATES of America, Appellant,**

v.

**James STUDLEY, Defendant, Appellee.**

**No. 90–1078.**

United States Court of Appeals, First Circuit.

Heard May 8, 1990.

Decided July 5, 1990.

---

Susan R. Via, Asst. U.S. Atty., Pittsburgh, Pa., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for U.S.

Bruce N. Sachar, Lynn, Mass., with whom Steven L. Picone, Salem, Mass., was on brief, for defendant, appellee.

Before CAMPBELL, Circuit Judge, ROSENN,* Senior Circuit Judge, and SELYA, Circuit Judge.

ROSENN, Senior Circuit Judge.

The central issue of this appeal by the Government is whether the district court erred in departing downward from the applicable guidelines in sentencing the defendant for receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). Although the district court's sense of compassion and pragmatism displayed in sentencing the defendant is understandable, regrettably, these considerations are insufficient to jus-

* Of the Third Circuit, sitting by designation.

tify a downward departure under the guidelines announced under the Sentencing Reform Act (the Act) of 1984, as amended.[1] Accordingly, we must reverse.

## I.

The Government charged James M. Studley with knowingly receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). The defendant had ordered by mail "taboo little girl videos" after reading an underground magazine which advertised sexually explicit materials. A Florida distribution company had initially placed the advertisement, but in the course of a United States Postal Service investigation, the Government took control of the company.

The defendant pled not guilty but later pleaded guilty under a plea agreement with the Government. At the change of plea hearing in the United States District Court for the District of Massachusetts, the judge ordered a presentence investigation report. The presentence report described Studley as a healthy and reasonably bright forty-one year old male. He had been employed for the last eleven years as a draftsman/designer for a nationally known corporation and is slated for a promotion. Studley had no prior criminal record. A psychologist diagnosed him as free of any psychopathology "although experiencing a moderate level of depression and some agitation." Studley acknowledged full responsibility for committing the acts alleged by the Government and expressed great remorse for them. He also took a polygraph examination which buttressed his claim that he had never molested children.

The probation officer calculated the base offense level as thirteen under the Sentencing Guidelines. United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.) § 2G2.2(a) (Nov.1989). He enhanced the suggested sentence two levels because the tape sent to Studley included visual sexual depictions produced with the use of prepubescent minors. U.S.S.G. § 2G2.2(b)(1). The probation officer adjusted the sentence

recommendation two levels downward because the defendant accepted responsibility. U.S.S.G. § 3E1.1(a). Thus, the probation officer computed the total offense level at thirteen, thereby triggering an imprisonment range of twelve to eighteen months.

The probation officer, however, presented several justifications to the court for a downward departure in sentencing. The officer noted that the Sentencing Commission created under the Act based most of its offense level determinations on empirical data. However, in calculating the offense level for receiving child pornography, the Commission made a policy decision that a base level of thirteen was appropriate.

The probation officer also observed that the District Court for the District of Massachusetts sentenced every defendant convicted of receiving child pornography to probation if the defendant previously had a clean record. The officer referred the court to another case in that district court which involved a similar offense in which the court made a downward departure to five years probation. Lastly, the officer noted that a downward departure might be appropriate because the Federal Bureau of Prisons did not have a treatment program for defendants like Studley.

The Government filed objections to the presentence report. The Government asserted that the Sentencing Commission had already taken into account the factors presented by the Probation office for departure. On the other hand, the Government acknowledged that the probation officer's upward enhancement of the offense level was inappropriate. The Government noted that Studley had expressed a preference for postpubescent child pornography in his correspondence with undercover authorities but the Government determined to send him a tape with prepubescent depictions.

At sentencing, the court adopted the Government's position with respect to the

---

**1.** 18 U.S.C.A. §§ 3551–3586 (West 1985 and Supp.1990); 28 U.S.C.A. §§ 991–998 (West Supp. 1990).

calculation of the adjusted offense level. Accordingly, the district court found that eleven rather than thirteen was the appropriate level. The possible range of imprisonment for this offense level was between eight and fourteen months and the fine range between $2,000.00 and $20,000.00. Following the plea agreement, the Government recommended eight months confinement, four of which would be community confinement and three years supervised release with a $5,000.00 fine.

The sentencing court chose, however, to depart from the guidelines, stating:

There is no indication that the defendant is a threat to the community, anything other than a disturbed person who has managed to keep his problems to himself and go about his business and be a useful citizen and not cause any trouble.

Obviously, the market, as the U.S. Attorney says, should be discouraged but it seems to me that for most people in this situation and certainly the people who have come before me with this offense, the prosecution itself is a very discouraging fact. It would seem to me that imprisonment will simply prevent the defendant from continuing to be a useful person and will add nothing to the public safety. He appears to be in a posture of rehabilitation, and the Bureau of Prisons has no facilities for treatment of people who have committed this type of offense.

The court therefore chose to suspend any sentence of imprisonment and placed the defendant on probation for 36 months with directions to receive counseling. The court also imposed a fine of $3,000.00. Pursuant to 18 U.S.C. § 3742(b), the Government appealed.

## II.

On appeal, the Government attacks both the probation officer's recommendations for sentencing departure and the district court's express reasons for departure. To avoid needless conjecture, we address only the factors expressly relied upon by the sentencing court in departing from the sentencing guidelines.

We review the sentencing court's stated reasons for departure under the three tier standard set forth by this court in *United States v. Diaz–Villafane,* 874 F.2d 43 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

First, we evaluate the circumstances relied on by the district court in determining that the case is sufficiently 'unusual' to warrant departure. If the stated circumstances pass muster, we proceed to the next rung and determine whether those circumstances were adequately documented. After the first two levels are climbed, the departure must be measured by a standard of reasonableness. On the third tier, the district court's leeway is substantial.

*United States v. Aguilar–Pena,* 887 F.2d 347, 350 (1st Cir.1989) (citation omitted). At the first tier, however, the sentencing court's discretion is not the issue. At this point, whether the circumstances are of a kind or degree that may be appropriately relied on to justify departure is a question of law and our review is plenary. *Id.*

Each of the sentencing guidelines established pursuant to the Act carves out a "'heartland', a set of typical cases embodying the conduct that [the] guideline describes." U.S.S.G. Ch. 1 Pt. A Introduction § 4(b) at 1.6 (Nov.1989). Sentencing courts may depart from the guidelines only when they find that the case before them is atypical i.e., involves "aggravating or mitigating circumstances of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b).

Courts should not frustrate the Congressional goal of uniformity in sentencing by manipulating their definition of the "heartland." A court should not mold typical criminal conduct or defendant characteristics into atypicality merely to achieve a departure from the guidelines. Turning to the instant case, we examine each factor relied upon by the district court to determine if the requisite "atypicality" exists

for departure.[2]

### A. Risk to the Community

■ The district court found "there is no indication that this defendant is a threat to the community." The Government contends the Sentencing Commission adequately considered the factor of "risk to community" in formulating the guidelines. Studley asserts that a careful reading of U.S.S.G. § 5H1.3 (policy statement) reveals that the Commission did not completely consider the mental and emotional conditions of the defendant and, thus, his risk to the community. Section 5H1.3 provides:

Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines, except as provided in the general provisions in Chapter Five. Mental and emotional conditions, whether mitigating or aggravating, may be relevant in determining the length and conditions of probation or supervised release.

We agree with the Government that the Commission did consider the factor of risk to the community in formulating the guidelines. The introductory commentary to chapter four of the guidelines provides:

[t]o protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered.

U.S.S.G. Ch. 4, Pt. A. The consideration of a factor by the Commission, however, does not preclude departure "if the factor is present to a degree substantially in excess of that which is ordinarily involved in the offense of conviction." U.S.S.G. § 5K2.0 (policy statement).

In view of § 5H1.3, the Commission obviously foresaw that departure might be bottomed upon the mental or emotional condition of a defendant. To the extent that the mental or emotional condition of the defendant affects the risk the defendant presents to the community, a district court may consider departure based upon this factor only if it, and the degree to which it exists, is atypical. Section 5H1.3 specifically states that defendant's mental or emotional conditions are *not ordinarily relevant*. If they are to be considered, the district court must expressly find that the defendant's particular mental or emotional condition is "atypical." When such conditions do exist, the sentencing court does possess broad discretion in determining that downward departure may be warranted.

Although a defendant's mental or emotional condition could under certain circumstances be grounds for departure, we perceive nothing exceptional about Studley in this respect. "[I]n the absence of indicia of atypicality, departure cannot be sanctioned." *United States v. Aguilar–Pena,* 887 F.2d at 350–51. Studley claims that he is special because the court found that he was not a child molester and that he had kept his deviancy to himself. We consider such a claim a non-sequitur, for underlying it is the mere assumption that most defendants convicted of receiving child pornography are also child molesters and extroverted deviates. There is nothing in the record to show that the court regarded the defendant's circumstances as unique because he was not a child molester. We too are unwilling to make a broad generalization that those convicted of receiving child pornography also ordinarily abuse children.

■ The Commission contemplated that departures were to be exceptional and, absent an express finding to the contrary, the presumption is that the defendant's circumstances are not so unusual as to justify

---

2. The Government contends the district court considered the defendant's lack of any prior criminal record in departing from the guidelines. The defendant asserts that the court did not depart based upon his lack of a criminal record but upon the low risk he presented to the community. We agree with the defendant that the gravamen of the court's comments were directed to the defendant's risk to the community.

We note that departure based upon a non-existent prior record would clearly be inappropriate. "[T]he guidelines specifically warn that 'a departure below the lower limit of the guideline range for a Category I criminal history cannot be appropriate.'" *United States v. Williams,* 891 F.2d 962, 966 (1st Cir.1989), *quoting* U.S.S.G. § 4A1.3.

departure. Given this presumption and the lack of express findings to the contrary, we conclude that the defendant's circumstances fall within the heartland of cases under this offense. We therefore hold that a district court may not depart from the Sentencing Guidelines governing the offense of receiving child pornography because of the limited extent of a defendant's deviancy and the court's attendant belief that he or she presents no risk to the community.

**B. Defendant's Posture of Rehabilitation**

■ In *United States v. Williams*, 891 F.2d 962 (1st Cir.1989), this court held that a defendant's "expressed desire to change his life" was a circumstance "already adequately taken into account in constructing the guidelines." *Id.* at 966. The Sentencing Commission specifically provided a downward reduction for a defendant's acceptance of responsibility which the defendant here received, as did the *Williams* defendant. This reduction is all that the defendant is entitled to receive. *Id.* Nothing in this record discloses that the defendant's posture of rehabilitation was so extraordinary as to suggest its presence to a degree not adequately taken into consideration by the acceptance of responsibility reduction. A downward departure on the ground of Studley's "posture of rehabilitation" is therefore impermissible.

**C. Unavailability of Treatment Programs**

The district court noted that the Bureau of Prisons did not have a treatment program for offenders with Studley's problem. In its brief, the Government informed this court that a treatment program for sex offenders will be available as of June 1990 in the Butner Correctional Institution. Notwithstanding, the Government asserts that the availability of treatment programs is a factor equally applicable in all cases involving the exploitation of minors and is, thus, not a ground for departure.

Initially, we note that the Government does not contend that the Sentencing Commission adequately considered this factor in enacting the Guidelines. Nor has the Government directed this court to any policy statement which precludes departure based on the unavailability of medical or psychological treatment for a prisoner. Although the availability of treatment facilities does apply equally to all defendants convicted of violating 18 U.S.C. § 2252(a)(2), the district court may properly conclude that only some defendants need treatment. Moreover, it is within the district court's domain to ascertain whether a defendant in need of treatment would actually respond to treatment given the defendant's background and psychological status. This determination is particularly important in saving precious government resources and in carrying out the objectives of the sentencing guidelines. Again, U.S. S.G. § 5H1.3 (consideration of defendant's mental and emotional condition) provides support under the Guidelines for the district court to consider the defendant's special need for, and receptiveness to, treatment in deciding whether to depart.

■ A defendant's unique mental or emotional condition is only relevant if the Bureau of Prisons does not have adequate treatment services. Adequate treatment services are "services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." *United States v. DeCologero*, 821 F.2d 39, 43 (1st Cir.1987). In this case, the Government has represented that, if the defendant needs treatment, the Bureau of Prisons will have adequate treatment services available in June 1990. However, the district court did not make a finding that the defendant has an exceptional need for, or ability to respond to, treatment. The court vaguely stated:

> He appears to be in a posture of rehabilitation, and the Bureau of Prisons has no facilities for treatment of people who have committed this type of offense.

As we previously stated, absent express findings to the contrary, the presumption is that the defendant's circumstances are not so exceptional as to warrant departure.

■ It appears that the sentencing court was moved not so much by extraordinary or exceptional circumstances of the defen-

dant, as by its unhappiness with the rigidity of the guidelines which left the sentencing judge with little room for departure. The court believed that the Sentencing Commission had not considered the "full range" of degrees of criminal conduct in the commission of this type of offense and that "only one member of the Commission had ever had any sentencing experience." Such rationalization, however, cannot justify virtual abandonment of the guidelines; it would lead to their utter paralysis and a rejection of the Sentencing Reform Act.

Regardless of how well founded, a belief by the sentencing judge that the punishment set by the Commission is too severe or that the guidelines are too inflexible may not be judicial grounds for departure under the sentencing system mandated by Congress. The crux of the matter is whether the guidelines have taken the principal sentencing factors into account. When they have, the sentencing court is not then at liberty to depart, regardless of whether the judge's independent consideration of those factors reasonably differs from the Commission's. *United States v. Aguilar–Pena*, 887 F.2d at 353. "Judicial dissatisfaction alone, no matter how steeped in real-world wisdom, cannot be enough to trigger departures, lest the entire system crumble." *Id.*

### III.

In sum, the district court lacked adequate grounds for departing from the Sentencing Guidelines. Accordingly, the Government's appeal is sustained and Studley's sentence must be VACATED. The case is REMANDED to the same district judge for sentencing within the applicable guideline range.