**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Antonio MALDONADO–CAMPOS,**
**Defendant–Appellant.**

**No. 89–2227.**

United States Court of Appeals,
Tenth Circuit.

Dec. 4, 1990.

---

Submitted on the briefs: *

James B. Foy, Silver City, N.M., for defendant-appellant.

William L. Lutz, U.S. Atty. & David N. Williams, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant, Antonio Maldonado–Campos, appeals his conviction and sentence. A jury convicted defendant of possession with intent to distribute less than fifty kilograms of marijuana, contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(D).[1] Defendant was sentenced to thirty-three months imprisonment to be followed by a three-year period of supervised release. Defendant timely filed his notice of appeal and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Defendant raises three points for reversal: 1) sufficiency of the evidence, 2) failure to grant a two-level reduction based upon a mitigating role in the offense as a "minor participant," *see* United States Sentencing Comm'n, *Guidelines Manual,* § 3B1.2(b) (Nov.1990), and 3) failure to de-

---

* Although the defendant requested oral argument, defendant's counsel failed to appear when this case was called for oral argument November 9, 1990 during the 1990 November Term in Denver, Colorado. At that time, the government waived oral argument. In view of these events and because we now have determined unanimously that oral argument would not assist materially in the determination of this appeal, the cause is ordered submitted without oral argument. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9.

1. Although the indictment did not reference 18 U.S.C. § 2 which provides for principal liability for those who aid and abet a crime, § 2 was incorporated. Section 2 applies to the entire criminal code for "[i]t is rather a statutory canon defining an ingredient of criminal responsibility generally, than the definition of law of any crime." *Breeze v. United States,* 398 F.2d 178, 183 (10th Cir.1968).

part downward from a criminal history category of III under the Sentencing Guidelines, *see* 18 U.S.C. § 3553(b); U.S.S.G. § 4A1.3. We affirm the conviction, vacate the sentence and remand for resentencing.

## I.

At approximately 11:30 p.m. on March 28, 1989, border patrol agent Michael Harrison was alerted that a car entering north on Highway 11 near Columbus, New Mexico might contain illegal aliens. Harrison drove eighteen miles northward, after first observing an older Cadillac heading south. He turned around and headed toward Columbus, thinking that the Cadillac was the car he was after. As he was headed south toward Columbus, Harrison again saw the Cadillac; this time it was headed north. Harrison turned around to follow it. A few minutes later, he saw the Cadillac parked along the road with the passenger door open. No occupants were in the car, but three bags of clothing were. Harrison, assisted by other agents, used tracking methods to follow three sets of bootprints, two from common cowboy boots and one from Chihuahua-heel boots which have a smaller track.

The bootprints led directly east to a fence parallel to the highway. Further down, an abandoned suitcase was found containing nine packages of marijuana. Continuing to track the footprints, Harrison discovered a mark by a fence post where "somebody had drug their heel and made a big mark." Rec. vol. II at 57. Harrison tagged the location and continued to follow the tracks which led to a boarded-up house eight miles away from the abandoned car. Harrison and his fellow agents yelled for the occupants to come out. Three men crawled out of a window and were identified as defendant and his codefendants Lucatero–Campos and Castillos–Granados. Defendant was wearing Chihuahua-heel boots; his two codefendants were wearing regular cowboy boots. When the agents returned to the spot which was marked, they discovered a second suitcase containing marijuana hidden under tumbleweeds several yards away.

The weight of the marijuana from the two suitcases was in excess of fifty pounds.

## II.

Defendant contends that the circumstantial evidence is legally insufficient to convict him because it is equally consistent with flight to avoid prosecution for immigration violations as it is with flight to avoid prosecution for possession with intent to distribute a controlled substance. Appellant's Brief at 18. He also contends that because he had a brace on his arm, he could not have carried the suitcases full of marijuana and that no evidence even indicates that he was present where the suitcases of marijuana were found. According to the defendant, based on these contentions, the district court should have granted his motion for judgment of acquittal. Fed.R.Crim.P. 29(a).

Given the jury's verdict, we review the evidence and its reasonable inferences in the light most favorable to the government to determine whether "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis omitted). A criminal conviction based upon principal liability, including aiding and abetting, may rest upon circumstantial evidence. *United States v. Johnson*, 911 F.2d 1394, 1399 (10th Cir. 1990); *United States v. Russell*, 905 F.2d 1450, 1453 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990). No requirement exists that the evidence negate all possibilities except guilt of the charged offense. *United States v. Alonso*, 790 F.2d 1489, 1493 (10th Cir.1986). Defendant need not have carried the suitcases of marijuana for the jury to conclude beyond a reasonable doubt that he knowingly participated in the marijuana importation venture, particularly given a flight on foot across the great plains with suitcases laden with marijuana rather than clothing. The evidence is sufficient to link defendant with the abandoned suitcases of marijuana found on the trail, which was followed "step-for-step the whole way" by border

patrol agents. *See* rec. vol. II at 86. Plainly, a jury could have found the defendant guilty beyond a reasonable doubt.

### III.

 Defendant next contends that he was entitled to a two-level reduction based upon a mitigating role in the offense as a "minor participant." Section 3B1.2, U.S. S.G., allows for a four-level reduction upon a finding that a defendant was a "minimal participant in any criminal activity," and a two-level reduction for a "minor participant" finding. The four-level reduction for minimal participants is for those "who are plainly among the least culpable of those involved in the conduct of a group." U.S. S.G. § 3B1.2, comment (n. 1). A "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." *Id.* On the other hand, a "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* (n. 3). Whether a defendant is a minor or minimal participant is a fact question generally reviewed under the clearly erroneous standard. *United States v. Alvarez*, 914 F.2d 213, 215 (10th Cir.1990). The defendant has the burden of proof and must show his entitlement to a downward adjustment by a preponderance of the evidence. *Id.*

In a written motion reviewed by the judge prior to sentencing, defendant sought the four-level reduction based upon minimal participation, *see id.* § 3B1.2(a). Rec. vol. I, doc. 19 at 1–2. At the sentencing hearing, the trial judge denied the requests contained in the motion and then, upon request, allowed defendant to add to the oral record. Defendant contended that codefendant Castillano–Granados, having acknowledged an interest in the marijuana, was more culpable and yet would receive a lighter sentence. *Id.* vol. II at 269. The trial judge responded that defendant's criminal history was responsible for defendant's heavier sentence. Thereafter, the following troublesome exchange occurred:

The Court: But furthermore, the Court is not persuaded that he [defendant] was a minimal participant. I think under the definition set forth in the sentencing guidelines, he was a minor participant, which is entirely different from minimal.

Mr. Foy: So would the Court be willing to give him a two level reduction then?

The Court: No sir.

Mr. Foy: Okay.

The Court: You're just making your record Mr. Foy, I said I've denied your motion.

Rec. vol. II at 269. Defendant contends that, having made a finding that defendant was a "minor participant," the trial court misapplied the sentencing guidelines by failing to decrease the offense level by two as envisioned by § 3B1.2(b).

In providing effective representation, it is obvious that defense counsel seized the moment, recognizing that a two-level reduction for being a minor participant is better than no reduction at all. What is not obvious is whether the trial court actually made a finding of "minor participant" as that term is defined in the commentary to § 3B1.2. *See United States v. Rutter*, 897 F.2d 1558, 1561 (10th Cir.) (guidelines commentary is "essential in correctly interpreting and uniformly applying the guidelines on a national basis"), *cert. denied*, —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). This is not a situation which lends itself to easy or generic categorization of the defendant as a minor participant; our recent cases suggest that those who transport marijuana or other controlled substances often are not minimal or minor participants. *See United States v. Donaldson*, 915 F.2d 612, 615 (10th Cir.1990); *United States v. Calderon–Porras*, 911 F.2d 421, 423–24 (10th Cir.1990); *United States v. Arredondo–Santos*, 911 F.2d 424, 426 (10th Cir.1990); *United States v. Pelayo–Munoz*, 905 F.2d 1429, 1430–31 (10th Cir.1990).

 As we explained in *United States v. Beaulieu*, 900 F.2d 1531 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990), a trial court must make

specific findings and explain its reasoning only concerning *departures* under the guidelines. *Id.* at 1535–36. When *adjustments* under the guidelines are involved, a trial court is in no way required to make detailed findings, or explain why a particular adjustment is or is not appropriate. *Id.* Thus, a district court is not required to announce the reasons supporting a factual finding concerning a role-in-the-offense adjustment under § 3B1.2. *Donaldson,* 915 F.2d at 615. However, when it is apparent from the court's optional discussion that its factual finding may be based upon an incorrect legal standard, we must remand for reconsideration in light of the correct legal standard. Although the district court referenced an unspecified definition contained in the Guidelines, the court also claimed that "a minor participant ... is entirely different from [a] minimal [participant]." Rec. vol. II at 269. This statement is not correct. Rather, the terms "minimal participant" and "minor participant" are not too distant points along a continuum of moderate criminal participation. Section 3B1.1 "provides a *range* of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment (backg'd) (emphasis supplied); *Pelayo–Munoz,* 905 F.2d at 1431. Reduced culpability is common to "minimal participant" and "minor participant" status and the determination of whether a defendant is a minimal participant, a minor participant or somewhere in between (and thereby entitled to a three-level reduction), "is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment (backg'd); *Donaldson,* 915 F.2d at 615. Here, the trial court's statement concerning minimal and minor participants is sufficiently doubtful that we remand for clarification and application of the correct legal standard as contained in § 3B1.2 and the related commentary.

## IV.

■ Defendant lastly contends that the district court misapprehended its authority to depart downward from the sentencing guidelines if it found that the defendant's criminal history category over-represented the seriousness of the defendant's criminal history. *See* U.S.S.G. § 4A1.3, p.s. Ordinarily, we lack the power to review a district court's discretionary decision not to depart downward. *See, e.g., United States v. Spedalieri,* 910 F.2d 707, 712 (10th Cir. 1990); *United States v. Havens,* 910 F.2d 703, 706–07 (10th Cir.1990); *United States v. Richardson,* 901 F.2d 867, 870 (10th Cir. 1990). However, we do have the power to review such a decision when it is the result of a district court's misapprehension of its power to depart downward. *See* 18 U.S.C. § 3742(a)(2); *United States v. Lowden,* 905 F.2d 1448, 1449 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 206, 112 L.Ed.2d 166 (1990); *United States v. Davis,* 900 F.2d 1524, 1530 n. 7 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990). The latter alternative applies in this case.

Defendant argued that a criminal history category of III, *see* U.S.S.G. ch. 4, over-represented seriousness because the underlying sentences pertained to unlawful entry into the United States after deportation. *See* rec. vol. I, doc. 19 at 2; vol. II at 269–70. According to the defendant, his criminal history was significantly less serious than that of other defendants who would be placed in category III. Rec. vol. II at 270. Defendant sought a downward departure using a criminal history category of I, claiming it more suitable. The district court commented:

Court: Well, I'm going to deny your motion, Mr. Foy. Perhaps the Court of Appeals can address that. That is of concern to me as well, that the illegal entry is treated as it would for a more serious crime, but I fought these Sentencing Commission guidelines long enough and I think its up to the Court of Appeals to give us some direction on it.

But I will state for the record, that I find that particular part of the sentencing guidelines that requires a Category 3 is too harsh and inflexible, but I feel that I'm committed under the sentenc-

ing guidelines to impose that kind of sentence.

Mr. Foy: Thank you, Your Honor.

*Id.* at 270–71.

██ Without expressing any opinion on the merits, we think that this potential problem is addressed, at least initially, in the Sentencing Guidelines. "[T]he Sentencing Commission has expressly identified overstatement of a defendant's criminal history as a circumstance that may warrant departure." *United States v. Summers,* 893 F.2d 63, 67 (4th Cir.1990); *see also United States v. Brown,* 903 F.2d 540, 544–45 (8th Cir.1990). The guidelines provide:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. *The court may then conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.*

U.S.S.G. § 4A1.3, p.s. (emphasis supplied). In downward departures, the court ordinarily will look to the next-lower criminal history category for guidance, *id.; Summers,* 893 F.2d at 67–68, however, a departure below criminal history category I is not appropriate. *United States v. Jagmohan,* 909 F.2d 61, 65 (2d Cir.1990); *United States v. Studley,* 907 F.2d 254, 258 n. 2. (1st Cir.1990); *United States v. Brewer,* 899 F.2d 503, 509 (6th Cir.), *cert. denied,* ── U.S. ──, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Williams,* 891 F.2d 962, 965–66 (1st Cir.1989). Thus, this is what the guidelines term a "guided departure," one in which "the guidelines provide specific guidance for departure by analogy or by other numerical or non-numerical suggestions." U.S.S.G. ch. 1, pt. A intro., § 4(b), p.s. (discussing two different types of departure under the guidelines: guided and unguided).

██ Downward departures based upon criminal history are made pursuant to 18 U.S.C. § 3553(b)[2] and are reviewed under the same three-part test for evaluating upward departures contained in *United States v. White,* 893 F.2d 276, 278 (10th Cir.1990). *Spedalieri,* 910 F.2d at 712 n. 5; *Brewer,* 899 F.2d at 506; *Williams,* 891 F.2d at 964; *see also Studley,* 907 F.2d at 257 (downward departure). We first determine *de novo* whether the circumstances

---

**2.** We reject the notion that downward departures based on the authority of U.S.S.G. § 4A1.3 p.s. are beyond the purview of 18 U.S.C. § 3553(b). In *United States v. Evidente,* 894 F.2d 1000, 1004 (8th Cir.), *cert. denied,* ── U.S. ──, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990), the Eighth Circuit interpreted its decision in *United States v. Justice,* 877 F.2d 664, 670 (8th Cir. 1989), and concluded that because the Sentencing Commission provided a policy statement authorizing departures based upon criminal history, that § 3553(b) did not apply. *Evidente,* 894 F.2d at 1004 n. 5. According to the court, § 3553(b) only pertains to factors "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" and, therefore, cannot apply to departures based upon § 4A1.3, a policy statement indicating that criminal history may provide a basis for departure. *Id.* This conflicts with the guidelines policy statement discussing both guided and unguided departures under § 3553(b). U.S.S.G. ch. 1, pt. A intro., § 4(b), p.s. Our cases consist-

ently have analyzed departure based upon criminal history category with actual or tacit reference to § 3553(b). *See White,* 893 F.2d at 278; *United States v. Fortenbury,* 917 F.2d 477, 478, 479–80 (10th Cir.1990); *United States v. Whitehead,* 912 F.2d 448, 452 (10th Cir.1990); *United States v. Freitekh,* 912 F.2d 421, 423 (10th Cir. 1990); *United States v. Dean,* 908 F.2d 1491, 1494 (10th Cir.1990); *United States v. Harris,* 907 F.2d 121, 123 (10th Cir.1990); *United States v. Russell,* 905 F.2d 1450, 1454–56 (10th Cir.), *cert. denied,* ── U.S. ──, 111 S.Ct. 267, ── L.Ed.2d ── (1990); *United States v. Gardner,* 905 F.2d 1432, 1434–35 (10th Cir.), *cert. denied,* ── U.S. ──, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990); *United States v. Bernhardt,* 905 F.2d 343, 344 (10th Cir.1990); *United States v. Jackson,* 903 F.2d 1313, 1316 (10th Cir.), *on rehearing,* 921 F.2d 985 (10th Cir.1990); *United States v. Keys,* 899 F.2d 983, 989–90 (10th Cir.), *cert. denied,* ── U.S. ──, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990).

admit of a factor not adequately taken into account by the Sentencing Commission which would justify departure. *White*, 893 F.2d at 277–78. Next, we review the district court's factual determinations supporting departure under the clearly erroneous standard. *Id.* at 278. Finally, under 18 U.S.C. § 3742(e)(3) we determine whether the degree of departure was reasonable. *Id.*

■ We lack a sufficient record to determine whether the district court would have granted a downward departure had it thought itself empowered. The district court's comments concerning the harshness and inflexibility of the Sentencing Guidelines in the abstract plainly would not be a proper basis for departure. *Studley*, 907 F.2d at 259–60.[3] "[G]rounds for departure must be specific to the particular defendant's commission of a particular offense under a particular set of circumstances." *United States v. Aguilar–Pena*, 887 F.2d 347, 353 (1st Cir.1989). We agree with the Eleventh Circuit that, in addition to the seriousness of a defendant's criminal history, recidivism should be considered in deciding whether to depart downward under § 4A1.3. *United States v. Collins*, 915 F.2d 618, 620–22 (11th Cir.1990). Although reported downward departures pursuant to § 4A1.3 based on over-represented seriousness are scarce, *see Collins*, 915 F.2d at 620–21 (accepting basis for departure, but remanding for consideration of appropriate amount); *Summers*, 893 F.2d at 67–68 (same); *United States v. Nelson*, 740 F.Supp. 1502, 1518 (D.Kan.1990) (departing downward); *United States v. Justice*, 877 F.2d 664, 670 (8th Cir.1989) (noting no cases), we cannot speculate as to whether the district court will exercise its discretion to depart on remand, and if so, what its reasoning will be. *See* 18 U.S.C. § 3553(c)(2). For as we said in *United States v. Gardner*, 905 F.2d 1432 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990), "[t]he

initial task of deciding when and by how much to deviate from the guidelines falls upon the trial court, ... and the trial court must articulate *its* analysis supporting the degree of departure." *Id.* at 1436 (citation omitted and emphasis in original).

We AFFIRM the conviction, VACATE the sentence, and REMAND for resentencing.

---

3. We agree with the following:

Courts should not frustrate the Congressional goal of uniformity in sentencing by manipulating their definition of the "heartland." A court should not mold typical criminal conduct or defendant characteristics into atypicality merely to achieve a departure from the guidelines.
*Studley*, 907 F.2d at 257.