**UNITED STATES COURT OF APPEALS** February 22, 2017

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CRYSTAL LYNN JONES,

    Defendant - Appellant.

No. 15-3059
(D.C. No. 5:14-CR-40105-DDC-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **SEYMOUR,** and **PHILLIPS**, Circuit Judges.

Defendant-Appellant Crystal Lynn Jones pleaded guilty to embezzling from her employer, Teel's Used Trucks ("Teel's") in Hays, Kansas. She objected, however, to the amount of loss asserted in the Presentence Report ("PSR") prepared by the U.S. Probation Office. Following Ms. Jones's plea, the district court held a sentencing hearing, at which the government presented evidence as to the amount of loss. The court then sentenced Ms. Jones to a term of imprisonment and restitution. She now appeals, arguing that (1) the district court

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

impermissibly shifted the burden of proof at the sentencing hearing, requiring her to disprove the amount of loss in the PSR rather than requiring the government to prove it; and (2) the court erred in including in the restitution award amounts embezzled outside the temporal scope of the charge to which she pleaded guilty. We reject both arguments and affirm the district court's sentence.

**I**

In 2014, Ms. Jones was charged with embezzling funds from her employer, Teel's, where she had worked as the office manager since 2007. Specifically, the one-count criminal information stated that

> [c]ommencing as early as 2008 and continuing through 2013, the defendant CRYSTAL LYNN JONES embezzled in excess of $500,000 from Teel's by writing unauthorized checks from Teel's company accounts at Commerce Bank and the Bank of Hays for her personal benefit. She also conducted [Automated Clearing House] transfers from Teel's accounts for her own personal benefit. JONES hid her scheme by altering entries in the company's accounting records via Quickbooks accounting software and by forging checks.

R., Vol. I, at 8–9. The information concluded that "[f]rom on or about 2008 through 2013," Ms. Jones, "knowing the same to have been stolen, converted and taken by fraud, transported, transmitted and transferred more than $500,000 in securities and money in interstate commerce. The foregoing is in violation of Title 18 United States Code, Sections 2 & 2314." *Id.* at 9. Ms. Jones pleaded guilty (without a plea agreement). She was subsequently sentenced to a prison term of twenty-seven months and ordered—pursuant to the Mandatory Victims

2

Restitution Act ("MVRA"), 18 U.S.C. § 3663A—to pay restitution to Teel's in the amount of $482,260.79. Two factors related to Ms. Jones's sentencing are at the center of the present appeal: (1) the amount of loss on which the district court based Ms. Jones's prison sentence and restitution amount, and (2) the time period during which Ms. Jones committed the offense. Below we summarize the facts relevant to each.

**A**

Beginning with the amount of loss, although the criminal information charged Ms. Jones with embezzling over $500,000 from Teel's, her plea petition stated only that she had embezzled more than $5,000, the amount required under the statute.[1] While addressing the court at the plea hearing, Ms. Jones's attorney specifically noted that

> in the plea petition you might notice that the amount of the loss we've listed at more than $5,000, and that's what the statute reads to make it a felony under 18 U.S.C. [§] 2314. And so that's what I've advised Ms. Jones to plead guilty to. We didn't want to waive any potential issues with the amount of loss for sentencing guidelines purposes, but that was—I wanted to point that out to the Court and that's what we were prepared to have her plead guilty to was an amount of loss of more than $5,000.

R., Vol. II, at 36–37. The district court also used the over-$5,000 figure when questioning Ms. Jones at the plea hearing:

---

[1] 18 U.S.C. § 2314 makes it a crime to "transport[], transmit[], or transfer[] in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud."

3

THE COURT: Ms. Jones, the government has said that beginning as early as 2008 and continuing through 2013 you embezzled in excess of $5,000 from Teel's. Did you do that?

THE DEFENDANT: Yes, sir.

*Id.* at 38. Thus Ms. Jones pleaded guilty only to embezzling over $5,000, not the over-$500,000 figure in the information.

The PSR, however, asserted that Ms. Jones "embezzled over $500,000 from Teel's." R., Vol. III, at 11. Specifically, it listed various time periods during which Ms. Jones wrote checks from a Teel's bank account to her own personal bank account, wrote unauthorized checks from a Teel's account for her personal benefit, or made unauthorized purchases with a Teel's credit card or by other means. Each entry lists the amount of funds embezzled during that time period. *See id.* at 11–12 (stating that "[f]rom approximately December 1, 2007 to October 1, 2013, Crystal Jones wrote unauthorized checks from the bank accounts of Teel's Trucks at the Commerce Bank and the Bank of Hays for her own personal benefit in an amount totaling approximately $16,878.16"). The various amounts listed total $517,464.91.

Ms. Jones challenged the amount of loss detailed by the PSR, asserting that "there were some expenses that were authorized by Teel's and others that were not. For example, Ms. Jones bought lunches and office supplies with a personal credit card (subject to reimbursement)." R., Vol. III, at 30. For this reason, Ms. Jones requested that the amount of loss be proven at sentencing. She also

4

specifically objected to the inclusion of a total of $35,018.86 paid to Blue Cross Blue Shield for insurance premiums for Ms. Jones and her family members, which Ms. Jones maintained was authorized by Teel's.

At the sentencing hearing, the government presented the testimony of Dana Snelling, who began working as the office manager at Teel's in January 2014. Ms. Snelling testified that she had provided the information on which the calculations in the PSR were based. The government proceeded to review each of the instances of embezzlement detailed in the PSR and ask if Ms. Snelling had supplied that information to the FBI and if that information was correct; in each instance, she answered in the affirmative. The government had noted in its response to Ms. Jones's objections to the PSR that Ms. Snelling would testify that "[r]eceipts were never found where [Ms. Jones] paid for things for Teel's with her own credit card. The only records of any reimbursements to [Ms. Jones] [were] in 2007 for $135.26 and $50.00," R., Vol. III, at 30, and Ms. Snelling confirmed at the hearing that those two reimbursements were the only instances in which she had found that money paid to Ms. Jones was in fact for an authorized reimbursement.

On cross-examination, Ms. Snelling admitted that when she arrived at Teel's "[t]here was a lot of missing information" from the business's record-keeping. R., Vol. II, at 81. She also agreed with defense counsel that she had found ledgers in the Teel's office that appeared to authorize payments for "things

5

like bills and parts and things like that" that Teel's made in connection with employees' overtime work, *id.* at 85, and that such payments "could be" authorized to reimburse certain employees for personal credit card expenditures. *Id.* at 87. However, she had never come across such a ledger for Ms. Jones. She further testified that she simply did not know whether Ms. Jones and Teel's may have had some type of agreement under which she could use her personal credit card for business expenses and then be reimbursed.

The court sustained Ms. Jones's objection as to the inclusion in the loss calculation of the $35,018.86 paid to Blue Cross Blue Shield in the amount of loss, but largely overruled her more general objection that the government had failed to prove the remaining amount of loss. Specifically, the court found that "there is certainly a flavor of wrongdoing around these [Blue Cross Blue Shield] insurance payments, but on the whole I find that the government has not shown by a preponderance of the evidence that this $35,000 figure was embezzled and so that is my ruling on [Ms. Jones's objection to the inclusion of that amount in the loss calculation]. It will be sustained." R., Vol. II, at 113–14. The court further found that "[t]he defendant also has shown that personal credit cards were used to pay for another $185.26" and accordingly reduced the amount of loss by that figure. *Id.* at 114. Subtracting the $35,018.86 and $185.26 from the $517,464.91 PSR figure, the court concluded that the amount of loss was $482,260.79. The court went on to state:

6

I note that the defendant, if in fact she had incurred substantial charges that were charged to her personal credit card for the benefit of the business and was not reimbursed for them, that she would have had every incentive to bring that proof forward, to itemize it and to show it, and she has not done so. And so I am not persuaded by her argument that there is any reduction that is warranted below that $482,000 figure.

*Id.* at 115.

Because the court found that the amount of loss was over $400,000, Ms. Jones's offense level was increased by fourteen under §2B1.1(b)(1)(H) of the 2014 version of the U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines"). *See* U.S.S.G. §2B1.1(b)(1)(H) (providing for a fourteen-level increase when the amount of loss is over $400,000 but below $1,000,000). Given a base offense level of six and a reduction of three in connection with Ms. Jones's acceptance of responsibility, the court found the total adjusted offense level to be seventeen. In light of Ms. Jones's criminal history category of I, the corresponding advisory Guidelines range was twenty-four to thirty months; the court imposed a twenty-seven-month sentence. Additionally, the court ordered Ms. Jones to pay restitution equal to the amount of loss—that is, $482,260.79.

**B**

The facts surrounding the time period during which Ms. Jones committed the offense are also relevant to the present appeal. As noted above, the criminal information states that Ms. Jones embezzled funds from Teel's "[c]ommencing as early as 2008 and continuing through 2013," and that her conduct "[f]rom on or

7

about 2008 through 2013" constituted a violation of the statute. R. Vol. I, at 8–9.

During the plea hearing, when asked to summarize the evidence that the government would have presented if the case had gone to trial, the prosecutor repeated this same language. *See* R., Vol. II, at 35–36 (stating that the criminal conduct took place "[c]ommencing as early as 2008 and continuing through 2013" and that "[t]herefore, the evidence would have shown that between 2008 and 2013 [Ms. Jones violated the statute]."). Furthermore, when the district court reviewed the charge in detail with Ms. Jones at the plea hearing, the court asked: "Ms. Jones, the government has said that beginning as early as 2008 and continuing through 2013 you embezzled in excess of $5,000 from Teel's. Did you do that?" *Id.* at 38. Ms. Jones replied that she had.

However, in calculating the loss amount, the PSR listed starting dates falling in 2007 in describing certain sets of alleged embezzlements. R., Vol. III, at 11–13 (noting that the total amount embezzled was $517,464.91 and that Ms. Jones "committed the offense from August 2007 until November 2013"). In particular, the PSR listed starting dates beginning in 2007 in describing the following five sets of embezzlements (the numbers listed here correspond to the paragraph numbers in the PSR):

> 13. From August 2007 to February 2013, Crystal Jones wrote unauthorized checks from the accounts of Teel's Trucks at the Commerce Bank and the Bank of Hays. The checks were written for the personal benefit of Jones and/or her husband, John Jones.

8

The total amount of unauthorized checks written by Jones was approximately $36,351.68.

14. From September 2007 to August 2013, Crystal Jones wrote unauthorized checks from the accounts of Teel's Trucks at the Commerce Bank and the Bank of Hays. The checks were written to make payments on Jones's HSBC/Discover credit card. The total amount of unauthorized checks written by Jones to HSBC/Discover account was approximately $28,705.68.

15. From September 2007 to September 2013, Crystal Jones wrote unauthorized checks from Teel's Trucks accounts at the Commerce Bank and the Bank of Hays to make payments for personal expenditures on her Washington Mutual/Chase credit card account. The total amount of unauthorized payments was approximately $157,814.91. . . .

17. From approximately December 1, 2007 to October 1, 2013, Crystal Jones wrote unauthorized checks from the bank accounts of Teel's Trucks at the Commerce Bank and the Bank of Hays for her own personal benefit in an amount totaling approximately $16,878.16. The checks were used by Jones for personal miscellaneous expenses. . . .

20. From September 2007 to October 2013, Crystal Jones wrote unauthorized checks from accounts of Teel's Trucks at the Commerce Bank and the Bank of Hays. The checks were written to make payments on Jones' Capital One credit card. The total amount of unauthorized checks written by Jones to her Capital One account was approximately $140,341.45.

R., Vol. III, at 11–12. Because the amount listed for each set was included in the total of $517,464.91 on which the district court relied (as noted above, the court subtracted $35,018.86 and $185.26 from $517,464.91 to arrive at $482,260.79), Ms. Jones alleges that the district court must have improperly included *some*

9

amounts related to 2007 embezzlements in its total loss (as well as restitution) figure.

## II

Ms. Jones argues that (1) "[t]he district court used the wrong standard in determining the loss amount, putting the burden on Ms. Jones to show how it should be reduced," Aplt.'s Opening Br. at 18, and (2) the court "plainly erred in including in the restitution award amounts from conduct that occurred before the time specified in the information and to which Ms. Jones pleaded guilty," *id.* at 24. As explained below, under the particular circumstances of this case, we conclude that Ms. Jones cannot prevail on either argument. We therefore affirm the district court's judgment.

## A

Ms. Jones first argues that the district court erred in finding that the amount of loss—for both sentencing and restitution purposes—was \$482,260.79. Specifically, she contends, the court "wrongly put the burden of proof on Ms. Jones with respect to the loss that it found." Aplt.'s Opening Br. at 20. Although, in her view, the district court properly found that the Blue Cross Blue Shield payments (amounting to about \$35,000) should be excluded from the amount of loss calculation, it improperly required Ms. Jones to prove that the remaining contested amounts should *not* be included rather than requiring the government to prove that they should be included. *See United States v. Griffith*, 584 F.3d 1004, 1011 (10th Cir. 2009) ("The Government bears the burden of

10

proving loss by a preponderance of the evidence.").  In support, she points to the following language from the district court's discussion at the sentencing hearing:

> I note that the defendant, if in fact she had incurred substantial charges that were charged to her personal credit card for the benefit of the business and was not reimbursed for them, that she would have had every incentive to bring that proof forward, to itemize it and to show it, and she has not done so.  And so I am not persuaded by her argument that there is any reduction that is warranted below that $482,000 figure.

R., Vol. II, at 115.  Ms. Jones argues that the court placed the burden on her "to chip away at the claimed loss by showing amounts to be authorized, rather than holding the prosecution to the burden of proving that loss in the first instance by showing the full sum to be unauthorized."  Aplt.'s Opening Br. at 22.

**1**

Ordinarily, we would review Ms. Jones's contention that the district court erred in shifting the burden of proof to her regarding the loss amount—which would be a species of legal error—de novo.  *See, e.g.*, *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004) (noting that "the sentencing court's . . . legal conclusions [are reviewed] *de novo*"); *accord United States v. Isiwele*, 635 F.3d 196, 202 (5th Cir. 2011) ("We review de novo the district court's method of determining loss . . . .").  However, we agree with the government that Ms. Jones did not make such a burden-shifting objection before the district court and that, accordingly, we review only for plain error.

11

Specifically, Ms. Jones did not at any point object to the court's alleged burden shifting, despite having an opportunity to do so. *See* R., Vol. II, at 131 (court asking counsel, after announcing its ruling for each side, whether "there's something else from you," and Ms. Jones's counsel replying, "No, Your Honor."). In such circumstances, we review only for plain error. *See* Fed. R. Crim. P. 51(b); *United States v. Mendoza*, 543 F.3d 1186, 1191 (10th Cir. 2008) (applying plain-error review where "[b]efore ending the [sentencing] hearing . . . the court specifically asked counsel for further comments or objections. 'Nothing' was the response."); *see also United States v. Espinoza*, 67 F. App'x 555, 561 (10th Cir. 2003) ("Espinoza . . . did not object to the burden of proof employed by the district court at sentencing . . . . Consequently, we only review this issue [of whether the preponderance-of-the-evidence or clear-and-convincing-evidence standard was appropriate] for plain error."); *United States v. Leachman*, 309 F.3d 377, 386 (6th Cir. 2002) ("Leachman claims the burden of proof was unconstitutionally shifted to him during the sentencing hearing. Leachman failed to object on this point at the trial level. Hence, as with all objections not raised at trial, we review for plain error only.").

In an attempt to escape plain-error review, Ms. Jones argues that a party is not required to object to a legal error in a district court's sentencing explanation. She principally relies on our reasoning in *United States v. Maldonado-Campos*, 920 F.2d 714 (10th Cir. 1990). There, we stated:

12

> When *adjustments* under the guidelines are involved, a trial court is in no way required to make detailed findings, or explain why a particular adjustment is or is not appropriate. . . . . However, when it is apparent from the court's optional discussion that its factual finding may be based upon an incorrect legal standard, we must remand for reconsideration in light of the correct legal standard.

*Id.* at 718. Ms. Jones observes that in *Maldonado-Campos* we did not hold that the defendant, in order to preserve a legal objection to what the district court stated in its "optional discussion," had to contemporaneously make that objection before the district court. Furthermore, Ms. Jones continues, "there likewise has been no suggestion in the cases that have invoked the [*Maldonado-Campos*] test that such an objection or request was made or was needed." Aplt.'s Reply Br. at 2. In this regard, she cites to *United States v. Gallegos*, 610 F. App'x 786, 787 (10th Cir. 2015); *United States v. Herriman*, 739 F.3d 1250, 1254 (10th Cir. 2014); and *United States v. Rodriguez-Padilla*, 439 F. App'x 754, 756 (10th Cir. 2011).

But the question of preservation was not at issue in any of those cases. Specifically, we see no indication that, like here, the government challenged defendants' failure to preserve their legal objections or that defendants' lack of preservation of sentencing objections was otherwise brought to the courts' attention. Therefore, we are unwilling to infer that *Maldonado-Campos* or any of the other cited decisions ruled on the preservation issue that confronts us here,

13

much less ruled in the defendants' favor, which would have effectively determined that a defendant has no obligation to contemporaneously object to legal errors in a district court's explanation of the basis for its Guidelines adjustment. *See United States v. Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quoting *United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc.*, 207 F.3d 1193, 1199 (10th Cir. 2000))); *accord United States v. Taylor*, 514 F.3d 1092, 1099 (10th Cir. 2008); *see also New York v. United States*, 505 U.S. 144, 203 (1992) (White, J., concurring in part and dissenting in part) ("Silence by this Court on a subject is not authority for anything."); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1289 (10th Cir. 2017) (noting that, where the court never addressed the issue, and the parties never briefed it, "we cannot reasonably infer that the . . . court considered and resolved the issue").

Ruling otherwise would upset our well-settled "requirement of contemporaneous objection to procedural errors," *Romero*, 491 F.3d at 1177, including objections to alleged errors associated with a district court's allocation of the burden of proof in computing the proper Guidelines sentence. *Compare e.g.*, *Gall v. United States*, 552 U.S. 38, 51 (2007) (concluding that "failing to calculate (or improperly calculating) the Guidelines range" was a "significant

14

procedural error"), *with United States v. Smart*, 518 F.3d 800, 803 (10th Cir.

2008) (noting that "a substantive component" of the requisite reasonableness

review of sentences "relates to the length of the resulting sentence").

Accordingly, we review Ms. Jones's burden-shifting objection only for plain

error.[2]

**2**

Under the stringent plain-error standard, Ms. Jones must establish: "(1) an

error, (2) that is plain, which means clear or obvious under current law, and

(3) that affects substantial rights.  If [s]he satisfies these criteria, [we] may

exercise discretion to correct the error if (4) it seriously affects the fairness,

---

[2]     Insisting that she had not forfeited her burden-shifting argument, Ms. Jones (tacitly) declined to contend in the alternative that she had satisfied the requirements of the plain-error standard.  Consequently, "we could permissibly decline to consider the [burden-shifting] argument altogether," effectively treating the argument as waived. *Abernathy v. Wandes*, 713 F.3d 538, 551 (10th Cir. 2013); *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) (noting that "the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court").  However, it is fully within our discretion to consider issues that have not been properly preserved for appellate review. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008) ("'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below,' when to deviate from this rule being a matter 'left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases[.]'" (citation omitted) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 121 (1976))); *see also Abernathy*, 713 F.3d at 552 ("[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary").  And we do so here, but only under the demanding plain-error standard.

integrity, or public reputation of judicial proceedings." *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (quoting *United States v. McGehee*, 672 F.3d 860, 866 (10th Cir. 2012)). This she cannot do. Specifically, Ms. Jones's arguments fail to persuade us that the district court committed any error at all, much less clear or obvious error. Therefore, we conclude that her burden-shifting contention cannot satisfy even the first prong of the plain-error standard and, thus, cannot succeed.

At the outset, we underscore that Ms. Jones's burden under the first prong is to show on the existing record that the district court erred; speculation or conjecture will not do. *See Sykes v. United States*, 373 F.2d 607, 612–13 (5th Cir. 1966) ("Speculation wastes time and bears ephemeral fruit. . . . The burden of showing that the error was committed, and is not mere speculation, [under a plain-error standard] is on the appellant."). Yet, Ms. Jones's offering does not carry this burden. Her argument—that the district court improperly shifted the burden of proof to her by requiring her to prove that particular dollar amounts should *not* be included in the amount of loss, rather than requiring the government to prove that they should be included—seems to mischaracterize the court's analysis. The comments that Ms. Jones identifies are reasonably interpreted as evincing nothing more than the court's efforts to summarize the evidence before it. Indeed, in ruling on Ms. Jones's objections to the amount of loss, the court clearly displayed its understanding that the proof burden rested on the

16

government's shoulders. For example, the court began by addressing the Blue Cross Blue Shield payments and found that the government had "not shown by a preponderance of the evidence" that those payments were unauthorized. R., Vol. II, at 114. The court only then went on to find that it was "not persuaded" by Ms. Jones's argument that any further reduction in the loss amount was warranted. *Id.* at 115.

The court's full discussion on the record seems to reflect its clear understanding that the government was required to prove the entire amount of loss by a preponderance of the evidence. Indeed, the government presented testimony from Ms. Snelling to establish this loss amount. And Ms. Jones fails to persuade us that her interpretation of the district court's comments is more likely correct. *Cf. United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005) ("Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in . . . the plain error test, and the burden is on the defendant."). In this regard, as we read the record, the court's specific comment that Ms. Jones would have had "every incentive to bring [proof that the purchases were authorized] forward," *id.* at 115, simply reflects the court's awareness that Ms. Jones was free to present evidence at the sentencing hearing in support of her substantive loss-amount objection, *see* Fed. R. Crim. P. 32(i)(2) ("The court may permit the parties to introduce evidence on the objections."); it does not indicate that the court had abandoned its previously expressed understanding of the proper

17

allocation of the burden of proof to the government. Thus, we conclude that Ms. Jones has not demonstrated that the district court erred at all—i.e., the first requirement of the plain-error standard—with respect to her burden-shifting argument. Therefore, we reject this challenge to the district court's sentence.

**B**

Ms. Jones next argues that the district court erred by including in its restitution calculation amounts that Ms. Jones allegedly embezzled outside the time period specified in the criminal information and in her plea. The information charged her with embezzling from Teel's "[c]ommencing as early as 2008," R. Vol. I, at 8; *see also id.* at 9 (noting the relevant conduct began "on or about 2008"), and, at the plea hearing, she admitted that she had embezzled from Teel's "as early as 2008," R., Vol. II, at 38. However, as Ms. Jones points out, in calculating the loss amount on which the restitution was based, the district court relied on the PSR, which lists dates in 2007 as the starting period of five sets of her alleged embezzlements. She reasons that the district court necessarily included *some* embezzlement amounts in its restitution order that are not causally connected to the time frame of her offense of conviction. Ms. Jones acknowledges that she makes this argument for the first time on appeal, but contends that reversal is appropriate because the court clearly or obviously erred under the MVRA. *See United States v. Alisuretove*, 788 F.3d 1247, 1258

18

(10th Cir. 2015) (noting that the MVRA's limitation on permissible restitution "necessarily includes the temporal limits of the offense as outlined in the indictment"); *United States v. Gordon*, 480 F.3d 1205, 1211 (10th Cir. 2007) ("The MVRA . . . did not change the general rule that restitution may only be ordered for losses caused by the offense of conviction."); *see also United States v. James*, 564 F.3d 1237, 1248 (10th Cir. 2009) (noting regarding a restitution challenge that "plain error review on appeal now requires [the defendant] to show a clear or obvious error affecting his substantial rights that seriously affected the integrity of the judicial proceedings"). However, for the reasons explicated *infra*, we ultimately reject Ms. Jones's argument.

Because Ms. Jones raised her restitution argument for the first time on appeal, we review only for plain error. *See, e.g.*, *United States v. Zhou*, 717 F.3d 1139, 1152 (10th Cir. 2013) ("Mr. Zhou's final argument is that the district court erred in ordering him to pay $417,396.39 in restitution . . . under the [MVRA] . . . . Where the defendant failed to object [to a restitution award], . . . we review only for plain error."). Again, this "demanding standard," requires Ms. Jones to "demonstrate (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *Rosales-Miranda*, 755 F.3d at 1258 (quoting *McGehee*, 672 F.3d at 876). If she does so, we may (4) "exercise discretion to correct the error if . . . it seriously affects the fairness, integrity, or

19

public reputation of judicial proceedings." *Id.* We conclude that Ms. Jones cannot satisfy this standard.

Ms. Jones's attack on the restitution award fails at the outset. Specifically, Ms. Jones's contention of error is not cognizable on plain-error review because it turns on an unresolved factual issue—that is, whether the district court actually included any money associated with 2007 embezzlements in its restitution calculation. *See United States v. Wright*, --- F.3d ----, No. 15-5090, slip op. at 18 (10th Cir. filed Feb. 21, 2017) ("On appeal, despite his silence in the district court, Wright contends that the district court erred by failing to reduce the amount of loss and restitution by the amount recovered after the Bank foreclosed on the property. But under the plain error standard, Wright waived this challenge by failing to dispute this fact at sentencing."); *Zhou*, 717 F.3d at 1154 ("To the extent [the defendant] is attempting to raise unpreserved factual errors, we have held under the plain error standard that failure to assert a factual dispute at sentencing waives the challenge because it prevented the probation officer from reviewing and the district court from resolving the fact issue."). In this regard, Ms. Jones relies solely on inferences from the PSR's language, which lists dates in 2007 as the starting period of five sets of her alleged embezzlements, to establish that "*some* amount for each period was improperly included in the [restitution] award." Aplt.'s Reply Br. at 7; *see also* Aplt.'s Opening Br. at 26 (inferring from "the wording of the [PSR]" that there is "no doubt that losses for

20

conduct from identified starting dates [were] included"); Aplt.'s Reply Br. at 7 (noting that "the [2007] starting points [of the PSR] necessarily have meaning"). But she never points to statements by the district court specifically indicating that it included any amounts based on any 2007 embezzlements in the restitution order, nor does she identify any other evidence reflecting such inclusion (e.g., one or more cancelled checks in the record evincing 2007 dates related to her Teel's embezzlement that the PSR drafter relied on).

Without more, Ms. Jones's argument is simply speculation. She insists that "[t]here is no other plausible way to read the [PSR]," Aplt.'s Reply Br. at 6; "the starting and ending dates used were meant to mark the point at which the first taking of funds within each set, and the last taking of funds within each set, was done," Aplt.'s Opening Br. at 26. But this inference is not predicated on any evidence—evidence which, judging from her appellate briefing, Ms. Jones cannot produce. *Cf.* Aplt.'s Reply Br. at 6 (noting that "it is impossible to say how many checks were included from 2007, or how much they totaled"); *see also* Aplt.'s Opening Br. at 31 ("[T]here is no way to say how many checks were wrongly included in the restitution award. . . . It could have been [increased] by a small sum, or it could have been [increased] by a large one."). Accordingly, we conclude that Ms. Jones's restitution argument—which turns on the resolution of an unresolved factual issue—is not cognizable under plain-error review. Consequently, we uphold the district court's restitution order. *See United States*

21

*v. Royal*, 100 F.3d 1019, 1033 (1st Cir. 1996) ("[U]pon a review of the sentencing hearing transcript, it indeed appears unclear whether the sentencing court took into account acts that occurred prior to Royal's involvement. But the record also indicates that Royal waived this objection in the district court, and any hypothetical error in the calculation of loss does not rise to the level of plain error.").

## III

For the foregoing reasons, we **AFFIRM** the district court's sentencing order.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge