**UNITED STATES of America, Plaintiff,**

v.

**M.B.,[1] Defendant.**

**Crim. No. 92–369 (HLS).**

United States District Court,
D. New Jersey.

Jan. 4, 1993.

---

1. Because of the highly private and personal matters discussed here, the court has chosen not to identify the defendant by name.

Patty Schwartz, Asst. U.S. Atty., Newark, NJ, for plaintiff.

Patricia D. Codey, Asst. Federal Public Defender, Newark, NJ, for defendant.

## OPINION

SAROKIN, District Judge.

Before the court is defendant's motion for a downward departure from the prescribed sentencing range. Her motion is granted for the reasons hereinafter set forth.

*Introduction*

In this matter, the court must determine the appropriate sentence to impose upon a defendant whose criminal activity was driven by fear. A victim of incest from childhood lasting even into her early twenties at the hands of her father, and physical abuse from her husband, she embezzled monies and risked public retribution in order to avoid private punishment. She feared the consequences of advising her husband that her employer bank would not grant a loan to them. Rather than face the potential abuse, she chose to steal the money.

She does not seek to justify or excuse her conduct, and indeed, has admitted her guilt. Rather, she asks that her sentence reflect her motives, her lifelong victimization, and the realities of an abused woman.

Although she does not seek to avail herself of the traditional defense of coercion sufficient to expunge her guilt, her history of relentless abuse and fear certainly merit consideration in the imposition and mitigation of her sentence. A life of incest and physical abuse may not serve to condone or excuse her act of embezzlement, but it should and must be considered and understood in determining what further punishment is appropriate.

*Background*

The court adopts the recommended findings of fact of the Probation Office as set forth in the defendant's presentence report, since the parties have not objected to the portions cited.

A. *Family Ties, Family Responsibilities, and Community Ties*

The defendant, now 37, was born in Hoboken, New Jersey as the youngest of three children. Defendant reports that her family life was very troubled. Both parents engaged in infidelities and alcohol abuse. Defendant's father physically abused her mother. Her mother obtained psychiatric counselling.

Defendant asserts that she was the victim of incest at the hands of her father from age three until her early twenties. Defendant indicates that no one was aware of the abuse while it was occurring. The incestuous relationship was revealed when defendant was in her twenties. Defendant's family did not believe her and she was further alienated from them. Defendant indicates that she presently has little contact with her family and that it is mostly negative.

Defendant became involved in a long-term non-marital relationship in her late teens and gave birth to two children, now 20 and 18. Defendant describes this relationship as physically abusive. In April of 1979, defendant married her present husband. He legally adopted defendant's daughters in 1980 and is presently employed as a police officer. Defendant reports that her husband has intermittently

physically abused her since 1982. Over the past ten years, defendant has left her husband several times and sought help from various women's shelters.

## B. *Mental and Emotional Health*

Defendant appears to have a history of mental health problems. She has experienced repeated forms of physical and emotional abuse beginning at a very young age as set forth above. As a result, the defendant has been hospitalized and has received sporadic counselling since 1983.

She engaged in marital therapy from September 26, 1983 to January 16, 1984, and in individual therapy from November 4, 1984 to November 15, 1985. Her diagnosis was borderline personality disorder.

Defendant and her husband have been counselled on various dates between 1982 and 1985 concerning their marital problems. This counselling focused on the abuse the defendant suffered as a battered wife and her accompanying guilt. The counselling continued sporadically until 1989, at which point defendant stayed at a shelter for a brief period of time.

In the midst of receiving counselling, the defendant was hospitalized on two occasions for suicide attempts. On January 4, 1984, she was admitted to a hospital as a result of a drug overdose. Her diagnosis was "marked depression", and she was discharged on January 6, 1984.

On December 27, 1986, she was admitted to a hospital with "acute suicidal ideation" after having an argument with her husband. Her diagnosis was "acute depressive episode/suicidal ideation." Because the defendant was not committable and had arranged to continue outpatient treatment with an incest group, she was discharged on December 29, 1986.

## C. *Physical Condition, Including Drug Dependence and Alcohol Abuse*

Although the defendant's parents abused alcohol regularly, she reportedly only uses it on an occasional basis. Approximately twenty years ago she admittedly smoked marijuana and used "some type of pills" with the father of her children, but this lasted for a period of less than six months.

In August of 1985 when the defendant left her husband for a period of time, she began to use marijuana and cocaine on a regular basis. This resulted in her having a severe problem with cocaine which continued into 1987. During this period of time, defendant's husband reportedly was unaware of her drug dependency, and she would wait for him to go to work so she could use cocaine. She believed that if her husband knew of her drug habit, he would arrest her and put her in a drug rehabilitation center. She suffered constant nose problems and drastic weight loss. When she again left her home in 1987, she resumed contact with her drug connection. Her husband then discovered her drug use and reportedly helped her to stop it. She asserts that she has not used any drugs since that time. She has never been afforded drug treatment.

## D. *Education and Vocational Skills*

Defendant is a high school graduate.

## E. *Employment Record*

The defendant has remained unemployed since the instant offense and initially indicated that she had not been seeking employment because of the unforeseen outcome of her case. However, she recently advised the U.S. Probation Department that she is currently seeking employment. She was last employed with the victim in this offense. She worked there from June 20, 1987 to January 15, 1992 (approximately four years, seven months), at which time she was terminated. She was employed as a Financial Services Representative earning $390.00 per week.

Prior to this, she was employed at another bank as an installment loan clerk from about January of 1984 to June 16, 1987 (approximately 3 years, 6 months). The defendant reportedly was fired for abuse of sick days.

From 1979 to 1983, the defendant was supported primarily by her husband. Before this, from 1972 to 1979, she received welfare assistance. Her only other em-

ployment was at her parents' grocery store, where she worked intermittently beginning at age eight.

### F. *The Offense Conduct*

In January of 1992, F.B.I. agents began an investigation into the defendant's involvement in embezzling funds from the subject bank. Through investigation it was discovered that from about February of 1991 until about January of 1992, she removed $87,484.90 from the accounts of two depositors.

On January 22, 1992, the defendant gave a full statement to F.B.I. agents as to her involvement in this offense. She indicated that in February of 1991 her husband asked her to obtain an automobile loan from the bank. She then applied for the loan in her name because her husband had filed for bankruptcy in 1985, making it difficult for him to obtain the loan. When the loan was denied, she decided to take the money from a customer's account and tell her husband the loan had been approved. She claims she was afraid to tell her husband the loan was denied because he would have physically abused her. Using the money from the customer's account, defendant made out a Treasurer's Check for $22,634.49 to pay for a vehicle her husband wanted.

Her husband then requested that she obtain a personal loan and mortgage from the bank. She again was afraid to tell her husband that they would not qualify for the loans, so she took money from two depositors' accounts. She told her husband that they had been approved for a $7,000 personal loan and a $50,000 mortgage loan.

The defendant stated that her husband did not know that she was stealing the money from the bank. She asserts that he was under the impression that they were getting legitimate loans from the bank and, in fact, he was giving her checks each month to make the payments on the loans.

### G. *Charge and Conviction*

On June 22, 1992, the defendant appeared before this court and entered a plea of guilty to a single count information charging her with embezzlement.

Since the offense took place after November 1, 1987, the Sentencing Reform Act of 1984 is applicable.

### *Discussion*

Based upon a total offense level of 12 and a criminal history category of I, the prescribed imprisonment range for the defendant according to the Federal Sentencing Guideline is 10 to 16 months.

Defendant moves in this case for a downward departure from the recommended sentencing range and requests the court to impose only a term of probation. Defendant seeks a downward departure based on her mental and emotional background. Section 5H1.3 of the U.S. Sentencing Guidelines states that mental and emotional conditions "are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)." Section 5K2.0 states that under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Courts considering the issue of whether a defendant's mental and emotional state warrants a downward departure have ruled that the mental and emotional conditions must be extraordinary or "atypical" in order for the court to depart from the applicable guideline range. *See, e.g., United States v. Studley,* 907 F.2d 254, 258 (1st Cir.1990).

In this case, the court finds that defendant's mental and emotional condition is exceptional. Defendant has submitted a report drafted by Dr. Nathaniel J. Pallone, Professor of Psychology and Criminal Justice at Rutgers State University, who examined the defendant in August of this year. Dr. Pallone's report indicates that the defendant is suffering from at least

three chronic mental disorders: post-traumatic stress disorder, organic personality disorder, and dysthymia (depressive neurosis).

According to Dr. Pallone, the post-traumatic stress disorder most likely resulted from defendant's repeated victimization as the object of incestuous child abuse. This disorder has manifested itself in the defendant through self-defeating behavior, suicidal actions, a hostile attitude toward the world, and feelings of helplessness and alienation. Pallone Report at 10–11.

Dr. Pallone indicates that the defendant's organic personality disorder is related to the fact that she has suffered cerebral concussions on two occasions. As a youth, defendant received a blow to the head with a coal shovel, resulting in a comatose state for several days. More recently, defendant's husband broke her jaw and she suffered a concussion.

Dr. Pallone reports that the defendant's organic personality disorder is probably of the "pseudopsychopathic" variety, which is characterized by emotional lability, impulsivity, socially inappropriate behavior, and hostility. Significantly, Dr. Pallone's report indicates that persons affected with the organic personality disorder are "prone to the taking of risks" and the "expression of needs and impulses without consideration of consequences or social convention (the patient may engage in dissocial acts, such as stealing [or] inappropriate sexual advances)." Pallone Report at 11–12.

In his conclusion, Dr. Pallone observed that "[t]he interaction [in defendant] between childhood sexual victimization and organic personality disorder cannot be construed as less than devastating." Pallone Report at 14. Although Dr. Pallone found that defendant's mental disorders were not exculpatory of her criminal behavior, he found that her mental condition was a "contributory cause" of her conduct. Pallone Report at 2. More specifically, Dr. Pallone indicated that defendant's illnesses bred in her "a sense of grandiosity and a propensity for sociopathy" which in turn led her to engage in the offense conduct. Pallone Report at 14.

Because of the relationship among the abuse suffered by the defendant, her unstable mental condition, and her criminal conduct, the court finds that defendant's mental condition is both exceptional and relevant. The court recognizes that abuse and neglect are often present in the lives of criminals, but finds that the defendant's emotional and mental disabilities are sufficiently "atypical" to warrant granting a downward departure. Defendant's conditions are of a kind or of a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. Accordingly, the court will exercise its power under Section 5K2.0 to depart from the guidelines. The court finds that a term of imprisonment is inappropriate in this case, and instead shall at sentencing impose a term of probation which shall include a period of home confinement, mental health counselling for the defendant (hopefully with her husband), drug counselling or treatment, if necessary, and restitution to the victim bank.

*Conclusion*

For the foregoing reasons, the defendant's motion for a downward departure is granted. The date of sentencing shall be scheduled forthwith.