**F I L E D**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JASON BOWEN,

      Defendant-Appellant.

No. 04-4314

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:04-CR-00203 BSJ)

Kent R. Hart, Assistant Federal Public Defender (Scott Keith Wilson, Assistant Federal Public Defender and Steven B. Killpack, Federal Public Defender, on the briefs), Salt Lake City, Utah, for defendant-appellant.

Elizabethanne C. Stevens, Assistant United States Attorney (Paul M. Warner, United States Attorney, with her on the brief), District of Utah, for plaintiff-appellee.

Before **BRISCOE, ANDERSON,** and **O'BRIEN**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Jason Bowen appeals his jury conviction of one count of possession of five

grams or more of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He raises four issues: (1) the evidence was insufficient to support his conviction; (2) the district court's instruction on constructive possession prejudiced his defense; (3) the district court erred in concluding it lacked authority to adjust his sentence for a mitigating role in the offense; and (4) the district court applied the sentencing guidelines in a mandatory fashion, in violation of United States v. Booker, 125 S.Ct. 738 (2005). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

On the night of February 16, 2004, Jack Guenon, a police officer employed by the city of Midvale, Utah, stopped a white Honda Civic after he noticed the vehicle had a broken tail light. Officer Guenon approached the driver's side of the vehicle and spoke with the driver, Phillip King. He also observed an individual sitting in the passenger seat who was later identified as Jason Bowen. Officer Guenon immediately noticed that the vehicle's steering column was broken and the ignition was punched out. As a result, he suspected that the vehicle was stolen.

Officer Guenon began his investigation by checking the status of King's driver's license and calling for backup. He also asked dispatch to contact the registered owner of the vehicle, Deborah Blanchard, in an effort to determine

whether either King or Bowen was authorized to drive the vehicle.

When Officers Bettridge and Richardson arrived, Officer Guenon relayed his observations to them and asked Officer Bettridge to assist him in questioning the occupants of the Honda Civic. While Officer Guenon approached the driver's side of the vehicle, Officer Bettridge walked to the passenger side, stopping at the right rear quarter panel so that he could see both King and Bowen. After Officer Guenon asked King to step out of the vehicle, he questioned King about the ownership of the vehicle and informed King that his driver's license was suspended. King told Officer Guenon that he had borrowed the car from a friend. Meanwhile, dispatch informed Officer Guenon that Deborah Blanchard did not know either King or Bowen. Officer Guenon then told King that he believed that the vehicle might be stolen and requested King's consent to search his person for weapons.

Although nothing was found as a result of his search of King, Officer Guenon decided to handcuff King out of concern for officer safety. As he handcuffed King, Officer Guenon testified that he noticed that Bowen, who was still seated in the vehicle, was "moving around quite a bit." Vol. II at 25. Officer Guenon testified that Bowen "was moving his hands, he was looking backwards, he was extremely nervous," and that he saw Bowen "lean forward into his seat going towards the bottom part of the seat." Id. According to Officer

Guenon, he did not know if Bowen was going for a weapon, or if he was concealing something. Id. Officer Bettridge also noticed Bowen's movements. He testified that as he approached the passenger door, Bowen "bent down," and that although he could not see Bowen's hands, it "looked like [Bowen] was placing something on the seat or trying to hide something." Id. at 61. He further testified that it looked like Bowen was placing something on the floor and that "[i]t could have been anywhere in the middle or the passenger side. Once [Bowen] moved down I couldn't see where his hands were." Id. at 70.

Officer Bettridge directed Bowen to step out of the vehicle, walk to the rear of the vehicle, and place his hands on his head. He testified that Bowen appeared nervous and that his body was moving quite a bit. Officer Bettridge asked Bowen if he had any weapons and Bowen responded that he had a knife in his pocket. After obtaining consent to search Bowen, Officer Bettridge found a Swiss Army knife, along with a rolled-up package of about thirty "teener" zip lock baggies in Bowen's left coat pocket.[1] In Bowen's right pants pocket, Officer Bettridge

---

[1] Officer Guenon testified that "teener baggies" are used for distributing methamphetamine. Based on his experience, he stated that the quantity of bags found on Bowen was consistent with an individual interested in selling a controlled substance, as opposed to merely personal use. Further, he noted that Bowen's teener baggies contained a stamp of a devil on them, and that dealers used such characters to distinguish their drugs from other dealers. Officer Bettridge described the teener bags as "clear with the little red heads striped all the way across them numerous times." Vol. II at 64.

-4-

located a smaller teener bag. Officer Bettridge testified that after he discovered the teener baggies, Bowen became "even more agitated and nervous," and started saying "no, no, no, no." Id. at 63.

After King gave his consent to search the vehicle, Officer Guenon called for a canine unit. When the canine unit arrived, Officer Guenon informed the officer accompanying the drug dog that there may be narcotics in the car because of the large number of teener bags found on Bowen's person. The dog alerted around the driver's seat area, next to the center console. Based on Bowen's movements, which he had observed, Officer Guenon first looked underneath the passenger's seat and found an individual teener bag with the same red devil head stamp as the bags found in Bowen's coat pocket. Officer Guenon next searched underneath the seat cover of the driver's seat, and discovered a small, round object inside a plastic bag, later identified as 24.3 grams of methamphetamine.

Bowen was charged with possession with intent to distribute methamphetamine. King, the driver of the vehicle, was not charged. At Bowen's trial, King admitted that he had been a methamphetamine addict since 1993, and that when the February 16 traffic stop occurred he was on parole for a prior drug conviction involving methamphetamine. King also testified that a parole board had concluded that he had violated his parole due to his constructive possession of the drugs found during the February 16 traffic stop. King stated that he had

three additional prior drug convictions for possessing methamphetamine. When questioned about the methamphetamine found in the Honda Civic, King testified that the methamphetamine was not his, he did not place it there, and that he did not have any idea how the methamphetamine got there.

King testified that a total of five people had access to the Honda Civic between February 3 and February 16. King explained that Jim Blanchard (the ex-husband of Deborah Blanchard) initially loaned the car to an individual named Jesse Searle to use and to make repairs. According to King, Searle was driving the Honda Civic when he was arrested on February 3, 2004, for possession of methamphetamine. When Searle was arrested, Jim Blanchard called Kim Griffiths and asked him and King to pick up the vehicle so that it would not be impounded. King claimed that police officers at the scene allowed them to take the vehicle and drive it back to Searle's residence.[2]

King testified that, following Searle's arrest, Jim Blanchard let him use the Honda Civic whenever Griffiths was not using it. King testified that on February 16 he picked up the Honda Civic and drove it to Wendy Racine's residence.

---

[2]    At trial, Officer Aaron Jones testified that he was present at Searle's arrest, and that he and the other officers thoroughly searched the car before releasing it to King and Griffiths. Officer Jones testified that he specifically recalled searching under the seat covers.

When he arrived at Racine's home, Bowen was sitting on the front porch.[3] According to King, Bowen told him that Racine had the only key to the house, but that she had left to go grocery shopping. It was after the two had located her and were returning to her home that Officer Guenon pulled them over.

## II.

### A. Sufficiency of the Evidence

Bowen contends that the government presented insufficient evidence for the jury to conclude beyond a reasonable doubt that he constructively possessed the methamphetamine. Specifically, he argues that a jury could not plausibly infer from the evidence that he was aware of the drugs which were found under the seat cover of the driver's seat.

"We review sufficiency of the evidence claims de novo, asking only whether, taking the evidence–both direct and circumstantial, together with reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find [Bowen] guilty beyond a reasonable doubt." United States v. Allen, 235 F.3d 482, 492 (10th Cir. 2000) (internal quotations omitted). "We do not question the jury's credibility determinations or

---

[3] The record reflects that Bowen's girlfriend lived with Racine.

its conclusions about the weight of the evidence." Id. "'The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt. Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt.'" United States v. Pulido-Jacobo, 377 F.3d 1124, 1129 (10th Cir. 2004) (citation omitted).

"To establish a violation of 21 U.S.C. § 841(a)(1), the Government must prove the defendant: (1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute or dispense the controlled substance." United States v. McKissick, 204 F.3d 1282, 1291 (10th Cir. 2000) (citing United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999)). "The possession of the controlled substance may be actual or constructive." United States v. Delgado-Uribe, 363 F.3d 1077, 1084 (10th Cir. 2004).

"[A] person has constructive possession of an item when he 'knowingly holds the power and ability to exercise dominion and control over it.'" United States v. Lopez, 372 F.3d 1207, 1211 (10th Cir. 2004) (citations omitted). "Dominion, control, and knowledge, in most cases, may be inferred if a defendant had exclusive possession of the premises; however joint occupancy alone cannot sustain such an inference." United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). "To prove constructive possession when there is joint occupancy of a

vehicle, the government must present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998) (citations omitted). "The government must present some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the ... contraband." Id. (citations and internal quotations omitted).

Bowen argues that the prosecution relied on conjecture and speculation, piling inference upon inference, to establish that he constructively possessed the methamphetamine. As described in more detail below, he argues that his brief occupancy of the Honda Civic, his nervousness around the police, his reaching underneath the passenger's seat, and the teener baggies found in his pockets were insufficient to sustain his conviction.

First, Bowen emphasizes that several people had access to the Honda Civic in the days prior to the arrest, including people who had a history of methamphetamine possession and distribution. Bowen specifically refers to Searle's arrest for possession of methamphetamine two weeks earlier while he was driving the vehicle, King's criminal history for using methamphetamine, and Griffiths' concession at trial that he had used methamphetamine before. As regards Searle's arrest, Bowen argues that it was possible that officers involved in that arrest overlooked the drugs that were later found in the car on February 16.

Bowen also argues that between the two occupants of the car, it was more likely that the drugs belonged to King. King had primary control over the car, he had a lengthy criminal drug history, he was literally sitting on the drugs, and he was later found by a parole board to have constructively possessed the drugs in question. In short, Bowen argues that the government presented insufficient evidence to establish some connection or nexus which individually linked him to the drugs.

Second, Bowen asserts that his nervous demeanor was a normal response to an encounter with the police. At most, Bowen claims that he was only nervous because he did not want the teener baggies to be found on his person, not because he was nervous about the drugs hidden in the car. Thus, he contends that his concern that the teener baggies would be found fully explained his nervous response to the officer's questioning.

Third, although he does not dispute that he made movements underneath the passenger's seat, Bowen states that no one testified that he made any movements toward the driver's seat. Bowen argues that at no time did King see him touch the driver's seat from the moment he entered the car until the police pulled the car over and detained both of them. In addition, he points out that Officers Guenon and Bettridge closely watched him during the traffic stop, but that neither officer saw him make any movements toward the driver's seat.

Lastly, Bowen argues that the teener bags found on his person cannot be connected to the car or the drugs in the car. He maintains that the government lacked evidence demonstrating that he possessed or even used drugs when he entered the car. In support, Bowen notes that King testified that he did not see anything that would give him the impression that Bowen was connected to the drugs under the seat cover.

Admittedly, this case involves some unusual circumstances, i.e., the large number of people with access to the Honda Civic prior to Bowen's arrest, Searle's arrest two weeks earlier for possession of methamphetamine when he was driving the same vehicle, King's criminal history involving methamphetamine, and the government's failure to charge King. While there is little direct evidence to establish that Bowen knowingly possessed the drugs, we conclude that there was sufficient circumstantial evidence to establish the necessary nexus between Bowen and the drugs found in the car.

First and foremost, Officer Guenon testified that the large quantity of teener baggies discovered on Bowen, along with the markings on the bags, were consistent with the distribution of methamphetamine. Further, a teener baggie with the same devil markings as the ones found in Bowen's pocket was found under the passenger seat. Officer Guenon also estimated that the amount of methamphetamine recovered from the Honda Civic was more likely for

distribution than for personal use because it would yield close to one-hundred dosage units. This testimony, coupled with the fact that no teener baggies were found on King's person, established a strong link between Bowen and the methamphetamine found in the car.

Other pieces of evidence lend further support. Officer Guenon and Bettridge both observed Bowen make furtive movements around the passenger seat and toward the middle of the car after King was removed from the car. Although their testimony did not indicate that Bowen's movements were directed toward the driver's seat, his actions support a conclusion that Bowen was attempting to conceal something toward the middle of the car. Indeed, Bowen had several opportunities to hide the drugs. Bowen could have hidden the drugs before Officer Guenon pulled over the Honda Civic, while Officer Guenon called for backup and ran a records check on King's driver's license, or after King stepped out of the vehicle to talk with Officer Guenon or when the officers observed Bowen moving around in the car. Officer Guenon discovered the drugs under a seat cover on the driver's seat, and more specifically, on the side close to the middle console which was easily within Bowen's reach. Bowen's proximity to the drugs would be insufficient evidence, when considered in isolation, to establish his knowledge of the methamphetamine. See Valadez-Gallegos, 162 F.3d at 1262 (concluding that a defendant's presence and proximity to drugs,

alone, is insufficient to support a conviction on a constructive possession theory). But when considered with the rest of the evidence presented, his close proximity to the drugs is probative.

Contrary to Bowen's arguments, the circumstantial evidence in this case did not require the jury to pile inference upon inference. Instead, the evidence was sufficient to convict Bowen of possession of methamphetamine with intent to distribute.

B. Constructive Possession Instruction

Bowen contends that the district court erred in instructing the jury on constructive possession. Specifically, Bowen asserts that one paragraph of the district court's instruction permitted the jury to infer his knowledge of the concealed drugs from his mere proximity to the drugs or from an act of concealment. Bowen believes that this error was prejudicial because there was a lack of direct evidence that he had knowledge of the drugs, and because the prosecutor referred to the instruction during closing arguments.

We review de novo whether, as a whole, the district court's instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards. United States v. Cerrato-Reyes, 176 F.3d 1253, 1262 (10th Cir. 1999) (citation omitted). "An instructional error is harmless unless the error had a substantial influence on the outcome of

the trial or if the court is left in grave doubt as to its influence." United States v. Cota-Meza, 367 F.3d 1218, 1221 (10th Cir. 2004) (citation omitted).

The challenged instruction, Jury Instruction Number 22, stated in its entirety:

> Before you may find the defendant guilty of the offense charged in Count 1 of the Indictment, you must find beyond a reasonable doubt that he possessed a controlled substance.
>
> The law recognizes two kinds of possession: actual possession and constructive possession.
>
> "Actual Possession" is direct physical control, as by holding an object, or keeping it on or around one's person.
>
> "Constructive Possession" is indirect control, as by knowingly having the power to exercise dominion or control over an object although someone or something else may actually be holding it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.
>
> In a situation where the object is found in a place (such as a room or car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the government must prove some connection or nexus between the defendant and the object, and must offer evidence supporting at least a plausible inference that the defendant has knowledge of and access to the object.
>
> *In addition to knowingly having the power or ability to control an object, the government must prove an act on the part of the defendant by which that power or ability is manifested and implemented, such as an act placing the object within easy reach of the defendant, or an act concealing the object from view.*
>
> Merely being present with others who have possession of an

-14-

object is not "constructive possession." In addition, momentary or transitory control of an object, without criminal intent, is not "constructive possession." You should not find that the defendant possessed the object if he possessed it only momentarily, and either did not know that he possessed it or lacked criminal intent to possess it.

You may find that the defendant "possessed" methamphetamine as the term is used in these instructions if the government proves beyond a reasonable doubt that the defendant had actual or constructive possession of methamphetamine.

Vol. I, Doc. 33 (emphasis added).

Bowen complains that the italicized portion of Instruction Number 22 provided a "formula for conviction" because it supplied the jury with specific examples of the evidence which would support a plausible inference that he had knowledge of the methamphetamine. According to Bowen, the instruction is prejudicial because it equates "knowingly having the power or ability to control an object" with "an act of placing the object within easy reach" or "an act of concealing the object." Bowen asserts that the instruction prejudiced his defense because the prosecution failed to present any evidence that he placed the methamphetamine within his reach or that he otherwise concealed the drugs. He also argues that during closing arguments the prosecutor quoted the challenged portion of the instruction and stated: "that's what happened in this case, that the object was in reach of Mr. Bowen, and was concealed from view under the seat cover of the driver's seat." Vol. III at 58.

-15-

We are not persuaded by Bowen's arguments.[4] The requirement that the government establish that Bowen committed an act by which his power and ability to control the drugs was manifested and implemented was set forth in United States v. Medina-Ramos, 834 F.2d 874 (10th Cir. 1987). When addressing constructive possession, we stated: "Knowingly holding the ability to control an object, and the acts by which that ability is manifested and implemented, are thus the means by which a crime is committed through constructive possession." Id. at 876. A little over a year later, in United States v. Cardenas, 864 F.2d 1528 (10th Cir. 1989), we addressed the Medina-Ramos language. At issue in Cardenas was whether there was sufficient evidence to prove that the defendant possessed a firearm located in a truck. Id. at 1533. Although the defendant admitted that he knew the gun was in the truck, he argued, citing to Medina-Ramos, that "in addition to knowingly holding the ability to control an object, there must be an act by which that ability is manifested and implemented." Id. We agreed with the defendant, but concluded that the "act" requirement was satisfied: "The placement of the gun within inches of Cardenas' hands, together with the act of concealment of the gun behind the potato chip bag, satisfy the requisite act manifesting

_____

[4] The government maintains this issue should be reviewed for plain error because Bowen's objection at the instruction conference was unclear. We need not resolve this issue because Bowen's argument also fails under harmless error review.

-16-

Cardenas' power to exercise dominion and control." Id. Thus, in Cardenas, we focused on two of the defendant's acts: (1) the act of placing the object within easy reach; and (2) the act of concealing the object.

We conclude that the challenged portion of Instruction Number 22 is a correct statement of the law, as the language substantially follows Cardenas and Medina-Ramos. Further, the emphasis on a defendant's "acts" is entirely consistent with our more recent decisions on constructive possession, which require the government to present evidence supporting a plausible inference of knowledge and access to the contraband or "some connection or nexus . . . linking the defendant to the contraband." E.g., Valadez-Gallegos, 162 F.3d at 1262. While we agree that the district court must exercise care when including illustrative examples of constructive possession in an instruction, the instruction challenged here was a correct statement of the law. The examples assisted the jury's understanding of constructive possession, informing them that they could consider a defendant's acts of placement and concealment, among others, to infer knowledge of the power or ability to control an object. See Instr. No. 22 ("*such as* an act placing the object within easy reach of the defendant, or an act concealing the object from view") (emphasis added). The examples were worded broadly and did not too closely track the specific facts presented in Bowen's case. Equally important, the examples provided did not unduly emphasize the

-17-

prosecution's theory of the case, or usurp the jury's fact finding role.

C.  Denial of Mitigating Role Adjustment

Bowen contends that, even though he was the only participant charged, the Sentencing Guidelines permitted the district court to adjust his base level score for playing a mitigating role in the crime.  He argues that we should remand his case for resentencing because the district court erroneously concluded that it lacked the authority to adjust his sentence based upon a minor or minimal participant status.

We review for clear error the district court's refusal to award a defendant minor or minimal participant status.  United States v. Chavez, 229 F.3d 946, 956 (10th Cir. 2000); see also U.S.S.G. § 3B1.2 n.3(C).  However, when reviewing a district court's application of the sentencing guidelines, we review legal questions de novo.  United States v. Leach, 417 F.3d 1099, 1105 (10th Cir. 2005) (citing United States v. Doe, 398 F.3d 1254, 1257 (10th Cir. 2005)).  We do not require a district court "to make detailed findings, or explain why a particular adjustment [under the guidelines] is or is not appropriate."  United States v. Maldonado-Campos, 920 F.2d 714, 718 (10th Cir. 1990) (citation omitted).  But "when it is apparent from the court's optional discussion that its factual finding may be based upon an incorrect legal standard, we must remand for reconsideration in light of the correct legal standard."  Id.

-18-

The Guidelines' mitigating role adjustment provides "a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 n. 3(A). The adjustment "is not applicable unless more than one participant was involved in the offense." U.S.S.G. § 3B1.2 n. 2. Thus, "an adjustment . . . may not apply to a defendant who is the only defendant convicted of an offense *unless* that offense involved *other participants* in addition to the defendant and the defendant otherwise qualifies for such an adjustment." Id. (emphasis added).[5]

Prior to sentencing, Bowen filed a motion for a downward departure based upon an alleged disparity in treatment between King and himself. Vol. I, Doc. 43, at 5-8. Bowen's motion asserted that the government failed to charge King with a crime even though "the conduct of Mr. King was the same conduct-if not more culpable-than his own." Id. At sentencing, Bowen's counsel informed the district court that she had recently filed a motion for a mitigating role adjustment under § 3B1.2(a), and that this motion was in conjunction with her prior motion for a

---

[5] The Guidelines define a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 n.1; see also United States v. Manthei, 913 F.2d 1130, 1136 (5th Cir. 1990) ("The Guidelines do not require that a 'participant' be charged in the offense of conviction in order to be considered; they provide just the opposite."); United States v. Mendoza, 341 F.3d 687, 693 (8th Cir. 2003) (same); United States v. Cohen, 946 F.2d 430, 436 (6th Cir. 1991) (same).

downward departure based on disparity of treatment. The district court responded: "Yeah, I've seen that. The practical problem there is it's a little difficult to talk about a minor role if you're the only one charged. That's kind of tough, it seems to me, but I'm happy to have you make your record." Vol. IV at 3. Bowen's counsel proceeded to argue that Bowen qualified for a mitigating role adjustment, maintaining that whether or not the government decided to charge King, King still had a role as the driver of the Honda Civic, as the person sitting on the drugs, and as the person with prior drug convictions. Id. She contended that King had "at least . . . the same, if not a more culpable role in the offense" as Bowen, and therefore, the district court should consider King's role as a basis for a downward departure or as a mitigating role in the offense. Id. at 5.

In response, the government stated:

> . . . I have not received that [supplemental] document [on a mitigating role adjustment], but I think the Court recognized that the fact that nobody else was charged, I don't believe the guidelines allow for a mitigating role when the defendant before the Court is the only one charged with the criminal conduct that has been prosecuted.
> . . . .
> With regard to the other grounds for downward departure, I guess one is disparate treatment and that was addressed in my response that there may be reasons for not charging Mr. King and that really isn't relevant under the guidelines to the sentencing here.

Vol. IV. at 7.[6] The district court denied both of Bowen's motions. The district court ruled that the government's legal position on the disparate treatment issue was correct. As regards its denial of Bowen's motion for a mitigating role adjustment, the court ruled on the merits of the motion without any mention of a lack of authority to rule. Id. at 7-8.[7]

Bowen argues that the district court's reasons for denying his motion for a mitigating role adjustment were unclear. Aplt. Br. at 45. See Maldonado-Campos, 920 F.2d at 714 (stating that "a district court is not required to announce the reasons supporting a factual finding concerning a role-in-the-offense adjustment under § 3B1.2"). Bowen also argues that the district court's statements at sentencing, as well as the prosecutor's representation that Bowen was not eligible for a mitigating role adjustment, lend support to the conclusion that the district court thought it did not have authority to grant Bowen a mitigating role adjustment.

---

[6] The government concedes that its position at the sentencing hearing concerning the applicability of § 3B1.2 to Bowen was erroneous. App. Br. at 47 n. 11.

[7] The district court also filed a written judgment on the disparate treatment motion, which stated: "The Court finds that disparate treatment of an uncharged accomplice is an impermissible basis for departure under the sentencing guidelines. Furthermore, the Court finds that in this case the facts do not support such a ground for departure." Vol. I, Doc. 48, at 3.

We conclude that the district court stopped short of holding that it lacked the authority to adjust Bowen's sentence under § 3B1.2(a) because he was the only person charged with a crime. But see United States v. Yager, 328 F.3d 1008, 1009-10 (8th Cir. 2003) (remanding where the district court expressly stated that it did not believe that it had the "authority to entertain a role reduction departure"). Although the district court commented that it would be difficult to apply the mitigating role adjustment in such a situation, this comment could simply mean that the fact that Bowen was charged and King was not would cut against Bowen's argument that he was less culpable than King. The court proceeded to listen to Bowen's arguments on the issue, and then denied the motion without any express factual findings. Further, there is no indication that the district court adopted the government's position on the issue. But even if the district court based its ruling on an erroneous conclusion that it was without authority to grant a mitigating role adjustment, remand is unnecessary because Bowen failed to demonstrate that he qualified for a mitigating role adjustment.

Bowen requested a four-level decrease as a minimal participant under § 3B1.2(a), claiming that, compared to King, he was a lesser participant. "A defendant has the burden of establishing, by a preponderance of the evidence, that he is entitled to a reduction in [his] base offense level under § 3B1.2." United States v. Onheiber, 173 F.3d 1254, 1258 (10th Cir. 1999). "A defendant is not

entitled to a minimal participant adjustment if he plays a 'significant role' in facilitating a drug trafficking scheme." Virgen-Chavarin, 350 F.3d at 1131 (citing United States v. Ayers, 84 F.3d 382, 384 (10th Cir. 1996)). The relevant guideline application note is instructive: "[Subsection (a)] is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. . . . It is intended that the downward adjustment for a minimal participant will be used infrequently." 8 U.S.S.G. § 3B1.2 n. 4.

"We have said that in order to weigh relative culpability, 'evidence must exist of other participants and their role in the criminal activity.'" United States v. Sukiz-Grado, 22 F.3d 1006, 1009 (10th Cir. 1994). Bowen never offered an explanation to the district court as to what role King allegedly played in the offense, nor did he establish that his own role made him less culpable than King. Rather, he merely pointed out the undisputed facts that King drove the Honda Civic on the night of the traffic stop, Officer Guenon discovered methamphetamine under the driver's seat, and that King had a criminal history of methamphetamine use. From these statements, Bowen asserted that "the conduct of Mr. King was the same conduct–if not more culpable–than his own." Vol. I. at 43. Bowen's attempt to demonstrate that he and King were similarly situated does not qualify Bowen for a minimal participant adjustment. To qualify for this adjustment, Bowen must show that, when compared to King, he was "plainly . . .

-23-

the least culpable," 8 U.S.S.G. § 3B1.2 n.4, or "substantially less culpable," id. at § 3B1.2 n. 3(A). Bowen has failed to carry that burden. Instead, the evidence elicited at trial indicates Bowen was more culpable than King.

D. Mandatory Application of the Guidelines

Finally, Bowen argues that the district court's mandatory application of the Guidelines to his sentence constituted plain error under Booker. We have determined that non-constitutional Booker error occurs when a district court applies "the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (citation omitted). Here, Bowen concedes that he did not raise the non-constitutional Booker error below, so we review for plain error. Id. (citation omitted).

"'Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 732 (citation omitted). The first and second prongs are satisfied when the sentencing court applies the Guidelines in a mandatory fashion. United States v. Dazey, 403 F.3d 1147, 1174 (10th Cir. 2005). Under the third prong, Bowen has the burden to show "'a

-24-

reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" Gonzalez-Huerta, 403 F.3d at 733, 736 (citations omitted). The fourth prong is more formidable, "as we will only exercise our discretion when an error is 'particularly egregious' and the failure to remand for correction would produce a 'miscarriage of justice.'" United States v. Trujillo-Terrazas, 405 F.3d 814, 820 (10th Cir. 2005) (citations omitted). Bowen's challenge fails on the third and fourth prongs.

This court has recognized at least two ways that a defendant may show that non-constitutional Booker error affected his substantial rights: (1) evidence of "the district court's expressed dissatisfaction with the mandatory Guidelines sentence"; and (2) evidence of a disconnect between the sentencing factors under 18 U.S.C. § 3553(a) and the imposed sentence. United States v. Clifton, 406 F.3d 1173, 1181 (10th Cir. 2005). Here, Bowen relies on both theories.

First, Bowen argues that the district court's comments at sentencing expressed misgivings about the mandatory nature of the Guidelines, as well as a desire to place him in drug treatment in lieu of sentencing him to prison. He suggests that these comments, coupled with the imposition of a sentence at the bottom of the applicable guideline range, demonstrates a likelihood that the district court would have imposed a lesser sentence under an advisory scheme. We disagree.

The district court's statements at sentencing do not convince us that the court was dissatisfied with Bowen's 87 month sentence or the then-mandatory guideline scheme. Before sentencing Bowen, the district court stated: "The guidelines say what they say. It's 87 to 108 months. So pursuant to the guidelines in the statute, the Court will sentence you to the custody of the Bureau of Prisons for a period of 87 months." Vol. IV at 10. The district court's offhand remark, "The guidelines say what they say," without more, fails to satisfy Bowen's burden under the third prong. Bowen also points out that earlier in the proceeding, the district court talked with him about his drug dependency and commented: "[I]t would be nice if the Court were in a position to put you in a program, put you in a hospital, put you in a place where people can help you. I'll try to do that with what you've got coming here." Id. These statements show that the district court took into account Bowen's methamphetamine addiction in fashioning an appropriate sentence, as opposed to expressing a desire to impose drug treatment in lieu of prison. Indeed, the district court recommended at sentencing that Bowen be placed in an intensive drug rehabilitation program. Finally, in denying Bowen's motion for a downward departure, the district court briefly mentioned that he had "previously given [his] commentary on many occasions as to the guidelines." Id. at 7-8. The court's vague reference to its

prior comments regarding the Guidelines is insufficient to enable us to discern what these past views were.

Next, Bowen contends that there is a disconnect between his imposed sentence and the sentencing factors under 18 U.S.C. § 3553(a). Bowen relies on his minimal criminal history (including the absence of any drug-related convictions), the lack of direct evidence to establish that he knew the drugs were present in the Honda Civic, his alleged mitigating role in the offense, the prosecutor's failure to charge King with a crime, and Bowen's rehabilitative needs. Again, we conclude that Bowen's position is without merit. It is clear from the record that the district court considered many of the factors under § 3553(a). See United States v. Kelley, 359 F.3d 1302, 1305 (10th Cir. 2005) (stating that we do not require the district court "to consider individually each factor listed in § 3553(a) before issuing a sentence") (citation omitted). We also observe that the district court denied Bowen's motion for a downward departure based on an over-representation of his criminal history and on Bowen's purported disparate treatment when compared to King. Further, the court made repeated references to Bowen's rehabilitative needs, including its statements at sentencing.

Accordingly, we conclude that Bowen has not met his burden on the third prong of our plain error review. We also conclude that Bowen has not pointed to

facts which would suggest that our failure to remand for resentencing would result in a miscarriage of justice.

AFFIRMED.