**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ARMANDO RODRIGUEZ-PADILLA,

      Defendant - Appellant.

No. 11-4021
(D. Utah)
(D.C. No. 1:10-CR-00032-CW-1)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

Armando Rodriguez-Padilla (Rodriguez) was arrested with Ramon Lerma-Quintero (Lerma) and Jose Lizarraga for possessing with intent to distribute 500 grams or more of methamphetamine. All three pled guilty. Rodriguez challenges the district court's refusal to reduce his offense level by two levels by applying a minor role adjustment pursuant to USSG § 3B1.2(b). We affirm.

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

# I. BACKGROUND

Around February 8, 2010, agents of the Ogden, Utah, Police Department and the Weber Morgan Narcotics Strike Force received information from a Confidential Informant (CI) regarding the distribution of methamphetamine and cocaine. An agent met with the CI to arrange a purchase of three pounds of methamphetamine. The CI telephoned Rodriguez and Lerma and arranged to meet them in the parking lot of a fast food restaurant. The meeting was monitored by surveillance teams through an electronic monitoring device placed on the CI and their visual observations. The CI entered the back seat of a Pontiac Grand Am occupied by Rodriguez and Lerma. There, they displayed to the CI for inspection a one-ounce sample of methamphetamine they had received from Lizarraga that morning. Using his cell phone the CI took a picture of the drug and texted the picture to the agents. The CI then entered the restaurant and called an agent to report that the two men were going to retrieve the three pounds of methamphetamine and would bring it to a hotel parking lot. The suspects were followed.

Agents observed another Pontiac Grand Am driven by Lizarraga pull behind the suspects' car. Both cars pulled over to the side of the road and the occupants switched cars. Rodriguez and Lerma drove to the hotel parking lot where the CI entered the switched car and was shown three pounds of methamphetamine. The CI left the car and called the agent, reporting the location of the methamphetamine. Lerma, Rodriguez and Lizarraga were arrested. Three pounds of methamphetamine were found on the passenger floor of the vehicle in plain view. Rodriguez had an additional 27.1 grams of methamphetamine in his pocket. Both Rodriguez and Lerma confessed their crimes to

the police at the time of their arrests. Lerma led the police to Lizarraga's home where Lerma was staying. He consented to a search of the common areas of the home where the police found more drugs. After obtaining a search warrant for Lizarraga's bedroom, to which only Lizarraga had access, police found additional drugs and paraphernalia. All three defendants pled guilty to the charge based on the drugs found in the car and requested a guidelines adjustment under USSG § 3B1.2(b) (minor role adjustment) and/or a variance for being a minor participant.

Lizarraga claimed he was "essentially a 'mule' sent by much larger players in a drug trafficking scheme" and was not in control of when he would receive drugs or the amount he would receive. (R. Vol. 1 at 20.) The district court denied Lizarraga's request for a guideline adjustment, but varied from the guidelines range (135 to 168 months) by reducing his sentence to 108 months incarceration.

Lerma did not request a guideline adjustment but did request a variance. He claimed he was not the one who made the key decisions. Rather, it was Lizarraga "who directed how, when and where" distribution would occur. (*Id*. at 26.) The court, after considering the sentence imposed on Lizarraga, among other factors, again varied from the guidelines, reducing Lerma's sentence from the 108 to 135 months guidelines range to 78 months imprisonment.

Rodriguez was sentenced last. In his sentencing brief, Rodriguez stated, "[i]t is true that all three defendants were equally culpable as to the drugs charged in Count I of the indictment. The drugs in that count, however, do not capture the full extent of drug dealing at issue in this case." (*Id*. at 43.) Rodriguez argued:

- 3 -

[Rodriguez and Lerma's] drug delivery was the outer edge of a much larger conspiracy, and . . . Lizarraga's conduct in this case makes that clear. Of the three defendants, he was undeniably the larger player, insulating himself from liability by sending [Rodriguez and Lerma] as his "errand boys" to take the fall if there were any problem. Accordingly, the court should find that [Rodriguez] qualifies for a role reduction based on his "minor role" in the drug distribution at issue in this case.

(*Id.* at 44.) Rodriguez claimed an application of the minor role adjustment coupled with a 20% variance (as was given to Lizarraga), justified a sentence of only 56 months imprisonment.

At sentencing, Rodriguez reiterated his position that the guideline adjustment should apply. Under his calculations, the resulting guideline offense level would be 27 with a guideline sentencing range of 70 to 87 months imprisonment.[1] The government opposed his approach, arguing that Lerma and Rodriguez actively participated in the drug sale negotiations and the logistics of making the sale. The prosecutor stated: "While I think it could be argued Mr. Lizarraga was guiding this to a certain extent, my position both from Mr. Lerma-Quintero and Mr. Rodriguez-Padilla is that they were not minor participants . . . ." (Supp. Vol. 2 at 8.)

The court denied the guideline adjustment, stating:

I believe, based on the facts set forth in the presentence report, it indicates Mr. Rodriguez-Padilla was actively involved in the transaction by calling Mr. Lizarraga and being actively involved in the negotiations to purchase three pounds of methamphetamine. Because of that and other facts set forth in the presentence report, I believe that the guideline is correctly calculated with an offense level of 36 allowing a two point reduction under

---

[1] Rodriguez was sentenced pursuant to the 2010 edition of the United States Sentencing Commission Guidelines Manual. All citations to the guidelines in this decision refer to the 2010 guidelines unless otherwise indicated. Because he had zero criminal history points, he was placed in Criminal History Category 1.

5C1.2 [the safety valve adjustment], and an additional three points for [acceptance] of responsibility.  Although the factors that [defense counsel] has pointed out may be considered by the court under variance, . . . I think that the guideline range is correctly calculated as set forth in the presentence report.

(*Id*. at 7-8.)[2]

However, the court determined a downward variance was appropriate, in part due to Rodriguez's lack of previous involvement in the sale of drugs and to avoid a sentencing disparity between him and his co-defendants.  The court imposed a sentence of 72 months in prison.

## II.    DISCUSSION

A.  Application of the Guidelines

"We review the sentencing court's factual decisions for clear error and its legal conclusions *de novo.*"  *United States v. Salazar–Samaniega,* 361 F.3d 1271, 1275 (10th Cir. 2004).  "We do not require a district court to make detailed findings, or explain why a particular adjustment [under the guidelines] is or is not appropriate."  *United States v. Bowen,* 437 F.3d 1009, 1019 (10th Cir. 2006) (quotations omitted).  "But when it is apparent from the court's optional discussion that its factual finding may be based upon an incorrect legal standard, we must remand for reconsideration in light of the correct legal standard."  *Id*. (quotations omitted).

Section 3B1.2(b) of the guidelines states: "If the defendant was a minor participant

---

[2] Rodriguez's base offense level was 36 based on the quantity of the methamphetamine  seized. The court applied a two-level reduction based on USSG  § 5C1.2 and a further three-level reduction for acceptance of responsibility resulting in a total offense level of 31.  Rodriguez's guideline range was the same as Lerma's -- 108 to 135 months in prison.

in any criminal activity, decrease by 2 levels." A minor participant is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2 cmt. n.5. Rodriguez claims the district court applied the wrong standard because it "specifically ruled, as a matter of law, that, given [his] active participation in the crime, it would not address [Rodriguez'] arguments for a minor role adjustment. Instead the court ruled that it would only consider those arguments when considering whether to vary from the Guidelines." (Reply Br. at 3.) He maintains, because the court based its decision on his "active participation" rather than his culpability relative to Lerma's and Lizarraga's, it erred as a matter of law. He is wrong for two reasons.

First, the district court did not, as a matter of law, preclude a minor role reduction solely because Rodriguez actively participated in the offense. The court's determination was based on his active participation "*and* other factors set forth in the presentence report [PSR]." (Supp. Vol. 2 at 7.) The PSR contained a full explanation of the roles each individual played in the charged offense. In fact, the PSR stated Lizarraga was "more culpable" than Rodriguez. (R. Vol. 3 at 14.) Because the same judge sentenced all three defendants, with Rodriguez being last, he was fully aware of the larger enterprise allegedly associated with the single attempted sale to which the three defendants pled guilty. Contrary to Rodriguez's assertions, the court's reference to his arguments in the context of a downward variance does not necessarily mean that it ruled out a minor role for Rodriguez prior to comparing his actions to those of the other defendants. Rather, the court's statement more likely reflects its recognition that, even if Rodriguez did not

qualify for a minor role under the guidelines, the factual basis for his request could be considered in another context – variance.

More importantly, the district court did not err in focusing on Rodriguez's active participation in the offense. Rodriguez's level of participation was directly relevant to whether he had shown by a preponderance of the evidence that he was "substantially less culpable" than the "average participant." USSG §3B1.2, cmt. n.3(A). The commentary to §3B1.2 does not specify whether defining an "average participant" requires the defendant's role to be compared with that of the other participants in the specific criminal activity or with a typical offender committing this type of offense. But we, like most courts, have held both comparisons are relevant and the defendant must be substantially less culpable under both scenarios to secure a reduction at sentencing.[3] *See United States v. Caruth*, 930 F.2d 811, 815 (10th Cir. 1991) ("[T]he Guidelines permit courts not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime. In other words, resort may be had to both internal and external measurements for culpability.") (citation omitted). And

---

[3] *See e.g., United States v. Morales-Machuca*, 546 F.3d 13, 24 (1st Cir. 2008) ("Less culpable, however, does not simply mean that the defendant was not the leader. The defendant must be not only less culpable than h[is] cohorts in the particular criminal endeavor, but also less culpable than the majority of those within the universe of persons participating in similar crimes.") (quotations omitted); *United States v. Carpenter*, 252 F.3d 230, 235 (2d Cir. 2001) ("On numerous occasions we have reiterated that a reduction pursuant to U.S.S.G. § 3B1.2 will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' or 'minimal' as compared to the average participant in such a crime.")(quotations omitted); *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995) ("Jackson's actions must be compared with those of the average participant in a similar scheme.").

the fact that Rodriguez was indicted and sentenced only for the amount of drugs he personally transported remains a viable consideration.[4] *See United States v. Martinez,* 512 F.3d 1268, 1276 (10th Cir. 2008) ("In other words, the court did not assess the total amount of narcotics involved in a larger conspiracy to traffic drugs. [The defendant] thus received a lower sentence than he would have as part of an overall distribution network.

---

[4] Interestingly, prior to the United States Sentencing Commission's 2001 amendments to the guideline's comments to § 3B1.2, Tenth Circuit precedent would have barred Rodriguez from receiving a minor role adjustment. In *United States v. James,* we held "a defendant is not entitled to a mitigating role adjustment where the relevant conduct of the conspiracy was not considered in calculating the base offense level." 157 F.3d 1218, 1220 (10th Cir. 1998). In this case, Rodriguez's base offense level was predicated on the amount of drugs he personally handled – not the amounts found at Lizarraga's apartment.

Effective November 1, 2001, the Commission added language to application note 3(A) of § 3B1.2 stating:

> A defendant who is accountable under §1 B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense *was limited to transporting or storing drugs* and who is accountable . . . only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline.

USSG App. C, amend. 635 (emphasis added).

Although the Commission's amendment no longer allows the relevant conduct limitation to preclude the adjustment, it does not disallow consideration of that circumstance as a factor in the court's analysis. Here, the district court emphasized the difference between the type of activity anticipated by the Commission when applying a minor role adjustment in these situations and Rodriguez's participation in the methamphetamine sale. Rodriguez did much more that transport or store drugs. He connected with a buyer, negotiated the sale, arranged for the transfer to the buyer, retrieved the drugs and returned with them to the buyer for payment. There is nothing more one could do to effectuate this sale of drugs.

- 8 -

Accordingly, to grant Martinez an additional adjustment simply because he was a mule in a larger drug distribution enterprise would cede [the defendant] an undeserved windfall.") (quotations omitted).

Here, the court did not misapply the guidelines by recognizing that Rodriguez, along with Lerma, arranged the meeting with the CI, brought a sample of the drugs to induce the buyer and returned with three pounds of methamphetamine to complete the sale. It can hardly be said that Rodriguez was substantially less culpable than either Lerma or a "typical" drug dealer who gets caught selling three pounds of methamphetamine. The court's optional discussion of the facts it would consider in applying a variance did not suggest its decision regarding a guideline adjustment was based upon an incorrect legal standard. *See Bowen*, 437 F.3d at 1020 ("[T]he court ruled on the merits of the motion without any mention of a lack of authority to rule."). And the court was not, as Rodriquez suggests, required to more fully compare the relative roles of the participants in the offense. *Id.*

B. Relative Culpability

Rodriguez claims he is clearly less culpable than his co-defendants and the circumstances in this case, like those in *United States v. Durham*, 139 F.3d 1325 (10th Cir. 1998), warrant a two-point reduction in his base offense level. In *Durham*, two partners in a drug conspiracy, over the course of several years, used the services of a broker (Durham) for a limited period of time. *Id.* at 1329. One of the leaders agreed to work for the government in exchange for a plea agreement and eventually became the government's main witness against his partner and Durham. The sentencing court

determined Durham was merely a middle-man and decreased his offense level under § 3B1.2.  We upheld the offense level reduction on appeal, stating:

> A trial court's findings concerning a defendant's role in a particular offense are treated by an appellate court as factual findings, which are subject to deferential review under the clearly erroneous standard.  It is undisputed that Montgomery was the leader of the drug distribution organization that is the subject of this case and that Evans was his partner.  Durham's role was limited to facilitating sales; proceeds from those sales went predominantly to conspirators other than Durham.  Furthermore, Durham had no dealings with Evans or Montgomery for over two years prior to Montgomery contacting him pursuant to his agreement with the government.  On the record before us, we conclude the sentencing court made no clear error.

*Id*. at 1336 (quotations and citations omitted).

Rodriguez asserts our holding in *Durham* stands for the proposition that "[w]hen the defendant's only role in a larger drug operation 'was limited to facilitating sales' the defendant is eligible for a mitigating role adjustment."  (Appellant's Br. at 13.)  He argues, "like the partners in *Durham*, Mr. Lizarraga and Mr. Lerma-Quintero were far more involved in drug trafficking.  Even if Mr. Lerma-Quintero was not a full partner with Mr. Lizarraga, he did reside in the same dwelling where large quantities of drugs were being stored for sale. Mr. Rodriguez-Padilla's limited role of facilitator in this crime also qualifies as a minor role in a much larger drug conspiracy."[5]  (*Id*.)

---

[5] One problem with this argument is that it was not raised before the district court in the context of its ruling on the application of § 3B1.2(b).  Indeed, Rodriguez's argument for a guideline adjustment in both his presentence memorandum and at sentencing described his role as equivalent to Lerma's.  In the presentence memorandum, while arguing he was entitled to a downward variance, he stated:

> Rodriguez recognizes that this argument creates an interesting dilemma for the court in light of the sentence imposed on co-defendant Lerma. Rodriguez acknowledges that his culpability here was essentially the same as Lerma's—together, they were Lizarraga's "errand boys."  However, the

Even if these arguments had been timely and proper, Lizarraga and Lerma's culpability due to a longer history in a large drug trafficking scheme does not require the court to conclude Rodriguez was a minor participant in the charged offense. Rodriguez's reading of *Durham* exceeds elastic limits. We know of no *per se* application of a mitigating role in any case. *See United States v. Eckhart*, 569 F.3d 1263, 1276 (10th Cir. 2009) (noting we have refused to apply a *per se* adjustment based on the status of couriers). Instead, the analysis is based on context and we find the situation here more like the defendant's in *Salazar-Samaniega*. There, a drug transporter argued he was entitled to a reduction for his minor role in the context of a larger drug trafficking enterprise. We stated:

> The record in this case provides little information about the scheme in which Salazar-Samaniega was involved. Salazar-Samaniega nonetheless urges us to infer from the fact that he was transporting cocaine from California to Ohio that there must also be "individuals in California who smuggled it into the United States from a foreign nation, arranged for its distribution from a distribution point in Ohio, concealed the drugs in the spare tire in the trunk of the vehicle, and arranged for [Salazar-Samaniega] to transport the quantity to the assigned delivery point in Ohio." Even if we did infer all these things, however, we would not commit the *non sequitur* of inferring in addition that therefore Salazar-Samaniega's own "role as a

---

court held that the Guideline's role reduction did not apply to Lerma. After reviewing the record, it appears that Lerma did not discuss the authorities cited in this memorandum, and his written pleading raised the issue only tepidly. Rodriguez hopes that he will not be prejudiced by the fact that the legal merits were not fully briefed prior to Lerma's sentencing. However, should the court persist in its decision on this matter, any sentence higher than Lerma's (78 months) would create unwarranted disparity between these two co-defendants.

(R. Vol. 1 at 46.) During sentencing, Rodriguez made no new argument for a guideline adjustment or for a downward variance other than his sentence should be less than Lerma's based upon supportive letters to the court from friends and family.

transporter of the drugs was obviously a limited and minor role relative to the roles of the [hypothetical other] individuals" who performed the tasks above."

*Salazar-Samaniega*, 361 F.3d at 1277-28. In this case, the record is sparse about the greater scheme suggested by the additional drugs in Lizarraga's house. Argument by Lizarraga's counsel at his sentencing hearing described the increasing problems with Mexican cartels, but we can find no evidence supporting the argument. And even so, it would not compel us to conclude that the district court clearly erred in denying Rodriquez a minor role adjustment here.

      **AFFIRMED.**

                                              **Entered by the Court:**

                                              **Terrence L. O'Brien**
United States Circuit Judge